Argued July 21, appeal dismissed December 12, 1916.
Rehearing denied February 27, 1917.

SARGENT, STATE SUPERINTENDENT OF BANKS, *v.*
WATERBURY.*

(161 Pac. 443; 163 Pac. 416.)

**Banks and Banking—Superintendent of Banks—Collection of Unpaid Subscriptions.**

1. The legal principles applicable to a suit by the superintendent of banks in his official capacity, in behalf of creditors of an insolvent bank, to recover from stockholders upon their liability for unpaid stock subscriptions, are not distinguishable from those applicable to

———

*On the question of liability of stockholders for unpaid subscriptions, see note in 47 L. R. A. 246.

On jurisdiction in equity to enforce liability on unpaid subscription to stock of corporation, see comprehensive note in 46 L. R. A. (N. S.) 440.        REPORTER.

any other case, where the individual liability of stockholders is sought to be enforced.

### Banks and Banking—Superintendent of Banks—Collection of Unpaid Subscriptions.

2.   The authority of the superintendent of banks to prosecute an action in behalf of creditors of insolvent bank to recover from stockholders upon their liability for unpaid stock subscriptions, being an action for the sole purpose of enforcing the individual liability of stockholders because of the lack of other assets to pay the debts, is derived from Section 4586, L. O. L., as amended by Laws of 1911, page 244, which says that he may, "if necessary to pay the debts of such bank, enforce the individual liability, if any, of the stockholders."

### Banks and Banking—Collection of Unpaid Subscriptions—Complaint.

3.   In such action, a complaint failing to allege defendants were stockholders at the time the suit was commenced is demurrable, even if it alleges that defendants were stockholders a few years prior to the commencement of the suit, since Section 799, subdivision 33, L. O. L., as to presumption of continuance of things once proven to exist, does not apply in such a case.

### Banks and Banking—Stockholders—Purchase of Stock by Corporation.

4.   Notwithstanding Section 4569, L. O. L., forbidding a bank to purchase its own capital stock, the surrender by bank stockholders of their stock to the bank was a valid transfer of their stock, where the bank did not permanently retire such stock upon its surrender, but subsequently reissued it and sold it to other persons.

### Banks and Banking—Insolvency—Collection of Unpaid Subscriptions.

5.   A suit by the superintendent of banks, in behalf of creditors of insolvent banks to recover from stockholders upon their liability for unpaid stock subscriptions, was a winding-up suit, and not simply a proceeding to collect a debt due to a corporation, where it appeared the corporation was hopelesly insolvent, and that it was necessary, in order to pay the debts of the bank, to enforce the individual liability of the stockholders.

### Banks and Banking—Collection of Unpaid Subscriptions.

6.   To enforce unpaid subscriptions of stockholders of an insolvent bank, an accounting of the assets and debts, and of the amount of capital remaining unpaid upon the shares, and the amount unpaid by each stockholder, and an assessment of the amount due from each stockholder, is a condition precedent.

### ON PETITION FOR REHEARING.

### Banks and Banking—Liability of Stockholder—Absolute Liability of Purchaser.

7.   In an action by the superintendent of banks in behalf of creditors of insolvent bank for purchase price of stock, liability of defendant is for the agreed price, and is absolute, as distinguished from the provisional liability of a subscriber for unpaid subscription.

**Banks and Banking—Insolvency—Liability of Stockholders on Stock Subscriptions.**

8.  In proceedings to wind up an insolvent bank, liability of a subscriber for unpaid stock subscriptions must be enforced *pro rata*, and only so far as necessary to liquidate indebtedness of bank after an account has been taken and balance settled.

> [As to when a bank may be said to be "insolvent," see note in Ann. Cas. 1916C, 85.]

**Evidence — Presumption — Continuance of Condition — Relation of Stockholders.**

9.  The provision of Section 799, subdivision 33, L. O. L., that a thing once proved to exist is presumed to continue as long as is usual with things of that nature, has no application to the relation of a stockholder with a bank, since duration is not an invariable attribute of ownership in shares of stock.

**Evidence—Presumptions—Continuance of Condition.**

10.  The provision of Section 799, subdivision 33, L. O. L., that a thing once proved to exist is presumed to continue as long as is usual with things of that nature, establishes a rule of evidence, and not of pleading, and such presumption cannot usurp place of averment.

**Banks and Banking—Insolvency—Liability of Stockholders for Unpaid Subscriptions—Enforcement.**

11.  Under Section 4586, L. O. L, as amended by Laws of 1911, page 244, empowering the superintendent of banks to enforce individual liability of stockholders, if necessary to pay debts of bank, only those persons can be proceeded against who hold stock at the time that the superintendent of banks is entitled to enforce such liability.

**Banks and Banking—Individual Liability of Stockholders—Nature.**

12.  The fund acquired by enforcing individual liability of bank stockholders, under Section 4586, L. O. L., as amended by Laws of 1911, page 244, is in the nature of a reserve, to be called in and applied when the other assets of the bank are exhausted and the balance of the indebtedness remains unpaid.

**Banks and Banking—Insolvency—Individual Liability of Stockholders—Action—Parties.**

13.  In an action to enforce individual liability of stockholders of insolvent bank under Section 4586, L. O. L., as amended by Laws of 1911, page 244, all stockholders should be made parties, and the court should ascertain and decree the proportional amount each should pay toward liquidation of bank's liabilities.

**Banks and Banking—Insolvency—Individual Liability of Stockholders.**

14.  Notwithstanding that the banking law requires one half the capital of a bank to be paid in before beginning business and the remainder within six months thereafter, which provision constitutes an assessment by operation of law, liability of a stockholder for un-

paid subscription is merely a chose in action, to be enforced only when necessary to make up a deficiency after the exhaustion of other assets.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE BENSON.

This is a suit by the superintendent of banks in his official capacity in behalf of the creditors of the American Bank & Trust Company of Portland, to recover from certain stockholders upon their liability for unpaid stock subscriptions. The complaint, after some formal allegations, proceeds as follows:

(4) "That on or about the 18th day of December, 1911, plaintiff, upon examination of said American Bank & Trust Company, in his capacity as superintendent of banks of the State of Oregon, found the same to be insolvent, and thereupon, on said day, said bank placed its business and assets under the control of plaintiff to be liquidated, by posting a notice on its door as follows: 'This bank is in the hands of the Superintendent of Banks,' and the board of directors of said bank in writing requested said plaintiff to take charge of the same, and immediately an executive officer of said bank notified plaintiff of such action, personally and in person and delivered to plaintiff the said written request of said board of directors; and upon said action of said bank and the written request of its board of directors, plaintiff took possession of all of the assets, property and affairs of said banking corporation, and ever since said day has been and now is in possession of said banking corporation and of all of its property and assets of every kind for the purpose of liquidating and settling up its business, and is proceeding with said liquidation and settlement, and in the collection of all money and of all credits due, and to become due to the said corporation, and paying its liabilities so far as funds are realized therefor.

(5) "That said American Bank & Trust Company, was on said 18th day of December, 1911, and still is indebted in a sum in excess of $97,000, and the liquida-

tion and settlement of the business and affairs of said American Bank & Trust Company, has and will entail a large expense, the total amount of which plaintiff cannot now state or determine, in addition to the liabilities of said corporation already existing; that the entire assets of said bank exclusive of its demands against stockholders do not exceed the probable value of $10,000; that it is necessary in order to pay the debts of said American Bank & Trust Company, to enforce the individual liability of the stockholders thereof.

(6) "That on or about the 12th day of November, 1906, the defendant G. W. Waterbury for himself, and as agent and trustee for the other defendants jointly and severally, subscribed for 850 shares of the stock of the Bank of America, now the American Bank & Trust Company, and for himself and as agent and trustee for the other defendants jointly and severally, signed the following subscription agreement, to wit: Subscription to the capital stock of the Bank of America. 2500 shares. Par value $100 each. We, the undersigned, hereby subscribe for the number of shares of the capital stock of the Bank of America, a corporation of the State of Oregon, set opposite our names respectively, and do hereby agree to take and pay for the same at the times and in the manner required by the board of directors of said corporation.

(7) "That thereafter said stock was issued to said defendants in accordance with the agreement therefor, made and entered into by and between the board of directors of the Bank of America, and the said defendants and stockholders of the Mortgage Guarantee & Trust Company, on or about the 31st day of December, 1906, in the following amounts:

| | | |
|---|---|---|
| James H. Alexander, | 30 shares | $ 3,000 |
| W. A. Currie, | 10 " | 1,000 |
| John E. Davis, | 30 " | 3,000 |
| G. W. Waterbury, | 420 " | 42,000 |
| C. W. Miller, | 100 " | 10,000 |
| S. Logan Hays, | 100 " | 10,000 |
| E. C. Knoernschild, | 160 " | 16,000 |

That each of said defendants received the amount of said stock herein respectively stated, and thereafter participated in the business of the said banking corporation so issuing the same, as stockholders of said corporation.

(8) "That said defendants turned over and delivered to said Bank of America, now American Bank & Trust Company, in payment for said 850 shares of stock, the entire assets, good-will and business of the said Mortgage Guarantee & Trust Company, which were not worth to exceed the sum of $3,000. That all the directors and officers of the said Bank of America, now American Bank & Trust Company, were at said time directors and officers of the Mortgage Guarantee & Trust Company, and had actual knowledge of the condition and affairs of said Mortgage Guarantee & Trust Company, and of the actual value of its assets, good-will and business, and knew that said assets, good-will and business were not worth the sum of $85,000, nor any other sum in excess of $3,000. That said board of directors of said Bank of America, conspired among themselves, and with the other defendants, and each and all of said directors were guilty of and practiced actual fraud upon all persons then and thereafter extending credit to and doing business with said Bank of America, in purchasing and pretending to purchase said assets, good-will and business of said Mortgage Guarantee & Trust Company, and in issuing therefor stock of the Bank of America to the par value of the sum of $85,000. That each of the defendants knew the condition and affairs of said Mortgage Guarantee & Trust Company and knew that said assets, good-will and business of said company were not worth the sum of $85,000, nor any other sum in excess of $3,000, and conspired with the board of directors of said Bank of America in the transfer of said assets, good-will and business, and participated in the fraud of said directors of the Bank of America, upon persons then and thereafter transacting business with and extending credit to said Bank of America, by means of the said fraudulent transfer of

said assets, good-will and business of the Mortgage Guarantee & Trust Company, and the issuance of said stock of the Bank of America therefor. That said board of directors and said defendants made said transfer of assets, good-will and business of said Mortgage Guarantee & Trust Company, and issued said stock of the Bank of America therefor, with the design and intent, and for the purpose of deceiving and misleading all persons doing business with and extending credit to said Bank of America, and causing all such persons to believe and rely upon the belief, that said Bank of America had $85,000 par value of stock actually issued and fully paid for at par.

(9) "That said stock subscription has not been paid, nor any part thereof, except by the receipt of the assets, good-will and business of the Mortgage Guarantee & Trust Company as hereinabove alleged, the value of which was not more than $3,000. Wherefore plaintiff prays for a decree that plaintiff do have and recover from off the defendants, and each of them, on behalf of the creditors of the American Bank & Trust Company of Portland, Oregon, the sum of $82,000, together with the costs and disbursements incurred herein, and for such other and further relief as the court may deem best and in accordance with the principles of equity."

The defendants Waterbury, Miller and Currie each filed a motion in this form:

"(1) That said complaint be made to show whether or not all of the stockholders or subscribers to the capital stock of the American Bank & Trust Company whose stock has not been fully paid for have been made parties to this suit: (2) that it shall be made to show the names of the creditors on whose behalf this suit is brought, the amount and nature of their claims, and when they became creditors of the American Bank & Trust Company: and (3) that it shall be made to show whether or not any of the creditors upon whose behalf this suit is brought were creditors on the 25th day of September, 1907."

Such motions being denied, the same defendants each filed a demurrer "upon the ground that the same does not contain facts sufficient to constitute a cause of suit."

These demurrers being overruled, the defendants answered, and, replies thereto having been filed, a trial was had resulting in a judgment and decree as follows:

"This cause coming on at this time to be heard upon motion of the attorneys for the plaintiff herein for a decree, and it appearing to the court at this time that this cause was heretofore duly tried and submitted, and the court having heretofore made its findings of fact and conclusions of law, which were filed herein, and the parties being present in court, plaintiff represented by his attorneys C. M. Idleman and I. H. Van Winkle, and the defendants being present and represented by their attorneys as shown by record, and the court being at this time fully advised, now, therefore, upon the said motion and in accordance with the said findings herein,

"It is hereby ordered, adjudged and decreed that the plaintiff herein have judgment against the defendants G. W. Waterbury, C. W. Miller, S. Logan Hays, John E. Davis and E. C. Knoernschild, and each of them in the sum of $75,314.04, and also for a decree against the defendant W. A. Currie in the sum of $535.00, and that the defendant Julius H. Alexander be dismissed from this cause with his costs and disbursements, and that the plaintiff herein recover costs and disbursements against each and all of said defendants excepting J. H. Alexander, and that execution may issue therefor."

From this decree defendants Waterbury, Miller, Currie and Hays appeal.          DISMISSED.

For appellants there was a brief over the names of *Mr. Martin L. Pipes, Mr. J. P. Winter, Mr. John M.*

*Pipes, Mr. George A. Pipes* and *Messrs. Huston & Huston,* with oral arguments by *Mr. Martin L. Pipes, Mr. Samuel B. Huston* and *Mr. Winter.*

For respondent there was a brief with oral arguments by *Mr. Cicero M. Idleman* and *Mr. Isaac H. Van Winkle.*

*Messrs. Joseph & Haney,* for defendants Julius H. Alexander and John E. Davis.

MR. JUSTICE BENSON delivered the opinion of the court.

1. At the outset it is observed that the only purpose of the allegation of fraud in the complaint is to meet the provision of Section 6696, L. O. L., relating to the conclusiveness of the valuation by directors of property taken in payment of stock subscriptions, and, therefore, the legal principles applicable to the case are not in any manner to be distinguished from those applicable in any other case where the individual liability of stockholders is sought to be enforced. The question to be considered is the sufficiency of the complaint as against a general demurrer. Defendants contend that the demurrer should be sustained for three reasons: (1) That the complaint fails to allege that the defendants were stockholders at the time the suit was commenced; (2) that all stockholders having unpaid stock are indispensable parties; (3) that it is incumbent upon the plaintiff to allege facts showing an accounting of the debts of the insolvent corporation, and an assessment of the amount necessary to be collected upon such share of unpaid stock to pay such debts.

2, 3. Considering these contentions in the order named, we first note the fact that while the complaint

alleges that the defendants subscribed for stock and that it was issued to them on December 31, 1906, and that they afterward participated in the business of the corporation, it is not alleged that they were stockholders when the suit was commenced in August, 1911. Since it appears from the complaint that this proceeding is avowedly for the sole purpose of enforcing the individual liability of stockholders, because of the lack of other assets to pay the debts, the authority of the superintendent to prosecute it is derived from the statute and is found in Section 4586, L. O. L., as amended, Laws of 1911, page 244, which says:

"And may, if necessary to pay the debts of such bank, enforce the individual liability, if any, of the stockholders."

Thus it is seen that the plaintiff's right to sue in this instance is limited to stockholders. Plaintiff insists that the complaint is effectually aided by the legal assumption, "that a thing once proved to exist continues as long as is usual with things of that nature" (Section 799, L. O. L., subd. 33), and cites a number of authorities to the effect that facts which the law presumes need not be pleaded. We have carefully examined all these authorities and are unable to discover where they aid the complaint in the present case. Bliss on Code Pleading (3 ed.), Sections 175 and 175a, states the doctrine thus:

" 'When the law presumes a fact, it should not be stated'; thus, the law presumes every man innocent of crime or of fraud, that he is of good character, that he has capacity to contract, that he is free, that he is not indebted or a bankrupt, that he has not been negligent in the performance of a duty, that his business has been transacted legally. The plaintiff should not state the facts thus presumed; but if to be put in issue, the contrary averment must come from the other side,

although in actions for injuries to character, some of the old common law precedents violate the rule by unnecessarily alleging the good character of the plaintiff. The law also presumes the fact of consideration in contracts evidenced by sealed instruments, or by negotiable promissory notes or bills of exchange. Their execution and delivery import consideration; hence it need not be alleged. Some of the states have extended the scope of this presumption to most, or all, written promises; and, as to them, a want of consideration is but matter of defense: Section 175.

"These presumptions should not be confounded with inferences—presumptions often called—arising from probative facts, the facts inferred, or presumed, and not those going to establish it. Thus the presumption that the stronger of two drowning persons will survive, if it exist at all, is, at common law, one of fact, and, in a given case, the pleader should allege that, on, etc., A. B.—the weaker person—died, leaving his only child, C. D.—the stronger person—as his heir at law. Whether C. D. in fact survived, or whether both perished together is matter of inference from all the facts. So the presumption of negligence which is sometimes drawn from the fact of the injury is an argumentative one, is an inference, and not a presumption proper, and the pleader should allege the negligence. Nor does the rule embrace conclusive presumptions": Section 175a.

Counsel for plaintiff are confounding the inference that because the defendants were stockholders in December, 1906, they were stockholders in 1911, with a presumption of a fixed fact, such as those suggested by Mr. Bliss in Section 175, *supra.* In 31 Cyc. 49, we read:

"But it is not sufficient that a fact may be inferable from the facts pleaded, where it is not necessarily implied. And it has indeed been said that under the codes a fact must be pleaded unless the law raises a conclusive presumption of its existence from the facts stated. In many cases, under a rule of liberal construc-

tion, courts have held pleadings sufficient which only inferentially and by reasonable presumption contained material averments, but such inference or presumption does not take the place of a positive averment for all purposes, and if objection to such pleadings is made seasonably and properly it will be sustained.''

In *Malone* v. *Craig,* 22 Tex. 608, it is said that:

''A petition should state the plaintiff's cause of action by distinct averments and not leave it to the court to deduce the existence of one fact from the statement of another.''

It cannot be overlooked that the relation of the defendants as stockholders is a vital element in plaintiff's right to maintain the suit; that it is just as important as the allegation in an action in replevin, that plaintiff is entitled to the immediate possession of the property. In *Affierbach* v. *McGovern,* 79 Cal. 268 (21 Pac. 837), it is said that:

''A complaint to be good must show a cause of action in favor of the plaintiff and against the defendant existing at the time the action is commenced. This complaint does not show this, but if it states a cause of action at all, shows that it existed more than four years before the commencement of the suit, and for that reason the complaint is clearly bad.''

The vice of such a pleading is strikingly apparent in the case at bar in the fact disclosed by the evidence that of the eight defendants, only three were actually stockholders when this suit was commenced, and that at that time their combined holdings aggregated only 30 out of the 850 shares upon which the suit is based.

4. Plaintiff insists that the surrender of their stock to the corporation was a violation of Section 4569, L. O. L., and void, and that therefore they are still the owners of the stock so surrendered. There might be some merit in this contention if the bank had per-

manently retired such stock upon its surrender, but the record discloses that it was subsequently reissued, being sold to other persons and that the very directors who turned the bank and its assets over to the superintendent of banks held their office and acted as stockholders by virtue of their subsequent holding of some of this very stock.

We come then, to a discussion of the second and third points which are so related as to be better considered together. The complaint does not plead the taking of an account and determination of the total unpaid debts of the bank, nor does it allege that there has been any computation or determination of the amount ratably necessary to be collected upon each share of unpaid stock to raise an amount sufficient to pay such debts. In *Bush* v. *Cartwright,* 7 Or. 329, we note the following:

"But upon the other hand, we find that there are many cases in which it has been held that the remedy is in equity, where the rights of the corporation, the stockholders and creditors can all be adjusted in one suit upon the principles of equality and justice. And as the views presented in these cases recommend themselves to our consideration as the most reasonable and appropriate we have concluded to adopt them."

In *Harris* v. *The First Parish in Dorchester,* 23 Pick. (Mass.) 112, which is cited with approval in *Bush* v. *Cartwright, supra,* is found the following language:

"If actions at law will lie, * * suits may be multiplied to an indefinite extent. Each bill holder or other creditor must have his separate suit, and each stockholder must be sued separately. Again, suits between stockholders to adjust their contributions, would be interminable. If a creditor's demand be larger than the amount of stock owned by any one, he must have

several suits against several individuals on the same
cause of action, or lose a part of his just demand. If
any one stockholder owned more stock than was
needed to meet any one claim made upon him, he would
be liable to several suits.''

In *Hodges & Wilson* v. *Silver Hill Mining Co.,* 9 Or.
200, this court speaking by Mr. Chief Justice LORD
says:

''To the extent of the stock subscribed and unpaid,
each stockholder is liable for the indebtedness of the
corporation. It is a several, distinct and limited lia-
bility, as to which each stockholder stands alone, irre-
spective of the amount for which others are liable,
except that if he pay more than his proportion of such
debts, he may, as in other cases, have contribution
from his co-shareholders. In the absence of any legis-
lation providing for the enforcement of this liability,
the implication of law is that the common law would
supply a remedy.

''Our predecessors, however, conceived that the
remedy in equity, where the rights of the corporation,
the stockholders and creditors, could all be adjusted
in one suit, upon principles of equality and justice,
would be more appropriate, adopted the remedy in
equity for the enforcement of such liabilities. *Bush*
v. *Cartwright,* 7 Or. 329. * * The amount of stock
subscribed and unpaid of each stockholder is more
than sufficient, many times, to liquidate the amount
of the judgment against the corporation. That fact,
however, would not make it less oppressive in princi-
ple to select some one of the number of defendant
stockholders, and compel him to liquidate the judg-
ment, because the amount of such judgment did not
exceed the amount of his stock subscribed and not paid
in, as claimed in the argument. It seems to us such
a theory would frustrate some of the principal objects
for which the remedy in equity was adopted; among
which was that to enable the court to order such con-
tribution amongst such stockholders as would be equi-
table, to raise the money to pay such claim. This

mode secures the payment of the indebtedness ratably, fixes, according to the liability, the burdens of such payment, and avoids the necessity of a multiplicity of suits."

In *Brundage* v. *Monumental G. & S. M. Co.*, 12 Or. 322, 324 (7 Pac. 314, 315), the same eminent jurist says:

"The constitution provides that 'the stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid, and no more.' By this section the liability of stockholders of a corporation is limited to the amount of their stock subscribed and unpaid; and the remedy to enforce this liability, it has been held, is in equity, where the rights of the corporation, the stockholders, and all the creditors can be adjusted in one suit. (*Ladd* v. *Cartwright*, 7 Or. 329; *Hodges* v. *Silver Hill M. Co.*, 9 Or. 200.) * * The liability, therefore, of the stockholders upon their unpaid subscription to the capital stock being a trust fund in equity for the payment of the debts of the corporation, all the creditors are entitled to share in it. As a result of this doctrine, the general proposition is well sustained by the authorities that a judgment creditor of the corporation, who has exhausted his remedy at law, may maintain a suit in equity in his own behalf, and in behalf of such other creditors of the corporation as may unite to become parties with him, against the corporation and its delinquent stockholders, and have a decree that an account of the assets and debts of the corporation be taken, and that the stockholders pay in and account for so much as may be due from them respectively to the corporation on account of their capital stock as will be sufficient to pay the debts represented by the plaintiff and such other creditors as may join. * * When the object of the bill is to settle or wind up the affairs of the corporation which is insolvent, and it becomes necessary to ascertain the whole amount of the indebtedness and to whom due, and also who are liable

to contribute upon their unpaid stock subscriptions, the necessity of bringing the suit in the name and for the benefit of all the creditors of the corporation, and against all the stockholders found within the jurisdiction, is conceded.''

5. Referring to the opinion just quoted, plaintiff insists that this is not a winding up suit but simply a proceeding to collect a debt due to the corporation. We cannot agree with this position, for it appears from the allegations of the complaint that the debts of the bank are nearly $100,000; that its entire assets do not exceed $10,000; and that it is necessary, in order to pay the debts of the bank, to enforce the individual liability of the stockholders.   In addition to these conditions, the allegations of paragraph 4 of the complaint are as follows:

''That on or about the 18th day of December, 1911, plaintiff, upon examination of said American Bank & Trust Company, in his capacity as superintendent of banks of the State of Oregon, found the same to be insolvent, and thereupon, on said day, said bank placed its business and assets under the control of plaintiff to be liquidated, by posting a notice on its door as follows: 'This bank is in the hands of the Superintendent of Banks,' and the board of directors of said bank in writing requested said plaintiff to take charge of the same, and immediately an executive officer of said bank notified plaintiff of such action, personally and in person and delivered to plaintiff the said written request of said board of directors; and upon said action of said bank and the written request of its board of directors, plaintiff took possession of all of the assets, property and affairs of said banking corporation, and ever since said day has been and now is in possession of said banking corporation and of all of its property and assets of every kind for the purpose of liquidating and settling up its business, and is proceeding with said liquidation and settlement, and in the collection of all money and of all credits due, and

to become due to the said corporation, and paying its liabilities so far as funds are realized therefor.''

It follows that this proceeding is merely a step in the process of winding up the affairs of the corporation, and does not bear any likeness to the case of a creditor seeking to recover his claim against a delinquent stockholder.

In *Lane's Appeal,* 105 Pa. St. 49 (51 Am. Rep. 166), which appears to be a leading case upon this question, we find the doctrine expressed thus:

"Now it is manifest upon the plainest principles, that in the case of an insolvent corporation, all of whose assets are exhausted except its unpaid capital stock, there can be no recovery against a delinquent stockholder until a call or assessment has been made upon him fixing the amount he is required to pay. Prior to insolvency this might be done by the corporation if it is not disabled by the special terms of the subscription contract. But when insolvency and exhaustion of assets exist, the unpaid capital is not available to any one creditor in satisfaction of his debt, because then the whole amount of the unpaid capital is a trust fund which does not belong to the corporation, but to the whole body of its creditors. Hence, whether the proceeding originates in the name of one, or of several, or of all the creditors, the result is the same in each. The capital, when recovered, inures to the benefit of all, and must be distributed among all ratably. Before any recovery can be had in such proceedings, no matter of what particular form, there must be an assessment made by a competent authority. The necessity for an assessment arises from the consideration that only so much of the unpaid capital can be called in as is required for the payment of the unsatisfied debts. If the whole unpaid capital is not required the whole cannot be called. In order to ascertain how much is required there must be an account of debts, assets and unpaid capital taken, and then a decree for an assessment of the amount due by

each stockholder. Thus in *Mann* v. *Pentz*, 3 N. Y.
423, the court said: 'This liability (for unpaid capital)
is only incurred when the capital paid in is not suffi-
cient to satisfy the debts against the corporation, and
then only to an amount sufficient to satisfy such debts.
It is therefore necessary that an account of the assets
and of the debts should be taken, of the amount of
capital remaining unpaid upon the shares, and the
amount unpaid by each stockholder, in order that they
may be made equally liable.' "

In *Myers* v. *Seeley,* 10 Nat. Bank. Reg. 411 (Fed.
Cas. No. 9994), it is said:

"Bills by creditors who have judgments against a
corporation have been sustained against the corpora-
tion and its stockholders. Said bills being framed in
the name of the judgment creditors and of all others
who may choose to come in and be made parties
thereto. In such cases the decree has been for an ac-
count to be taken of the debts and assets of the cor-
poration, for the appointment of a receiver, to whom
the stockholders and officers are ordered to pay and
account respectively for so much of the assets and
capital stock as are necessary to pay the debts due to
the creditors; the assets thus collected and received to
be applied by the receiver in discharge of the debts.
The reason of that rule is that the unpaid subscrip-
tions are assets applicable to the payment of corporate
debts which the corporate authorities may call in for
corporate purposes. If there are adequate assets
other than said calls, then the creditor has no legal or
equitable right to insist upon such calls. Primarily,
the amount due on subscriptions is a debt to the cor-
poration which it alone can enforce and unless the
corporation is without other assets to meet its obliga-
tions, and fails to make the needed calls, creditors
cannot interpose. When the facts justify their inter-
position, an account of assets and debts should be
taken in order that it may be known what, if any, calls
should be made. No further call should be made than
what is sufficient, together with the other assets, to

meet all debts; for the bill by creditors, cannot reach beyond the satisfaction of their demands. They have no other equity."

These authorities not only represent the doctrine upheld, as we think, by the weight of authority, but are supported by sound reason and the fundamental principles of equity. The allegations of the complaint disclose a corporation in a condition of hopeless insolvency. For this reason it was voluntarily turned over to the superintendent of banks and every proceeding which he institutes is a step in the process of winding up its affairs. He cannot proceed in the manner undertaken here. If he could, he might secure judgments far in excess of the demands of the creditors in whose behalf he sues, and to which no rules of equity or justice entitle him. Much was said in the argument as to the case of *Sargent* v. *American Bank & Trust Co. et al.,* 80 Or. 16 (154 Pac. 759), as having a controlling influence upon the conclusions to be reached in this case, but the history of the two is so widely different as to render the former of practically no value in the determination of the questions here considered. The suit is therefore dismissed without prejudice to any further proceeding not inconsistent with the views herein expressed.    DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.

83 Or.—12

Denied February 27, 1917.

ON PETITION FOR REHEARING.

(163 Pac. 416.)

Petition for rehearing denied.

*Mr. Martin L. Pipes, Mr. Samuel B. Huston, Mr. J. P. Winter, Mr. John M. Pipes, Mr. George A. Pipes,* and *Mr. Oliver B. Huston,* for appellants.

*Mr. Cicero M. Idleman* and *Mr. Isaac H. Van Winkle,* for respondent Sargent.

*Messrs. Joseph & Haney,* for defendants Julius H. Alexander and John E. Davis.

No appearance for defendant E. C. Knoernschild.

Department 1.    MR. JUSTICE BURNETT delivered the opinion of the court.

The plaintiff has filed a petition for rehearing of this cause, the leading feature of which is an endeavor to make the decision of *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16 (154 Pac. 759, 156 Pac. 431), of controlling influence for his contention here.    That case is also known as the Ralston case, as he was the principal defendant, and will be so designated for convenience in discussion.    The two cases may be thus distinguished: The defendants here signed the subscription paper set out in the complaint as original direct subscribers to the capital stock of the bank.    All this occurred before the concern began business as a bank, for it is recited in the same pleading that the corporation was formed March 15, 1906; that the subscription paper was signed November 12, 1906; and

that the institution was engaged in business from January 1, 1907, until December 18, 1911, at which last named date the plaintiff took control. On the other hand, after the bank was a going concern it made a contract with Ralston on May 2, 1908, whereby it bartered to him and he traded for some shares of its stock which were then its property or which at least it had in some manner acquired from its stockholders. The latter transaction is substantially the same as if the bank had been the owner of a carload of pig iron or a block of municipal bonds which it had sold to Ralston and he had given but not paid his note therefor. The bank examiner in charge of the concern could sue on the note the same as if given for borrowed money. In fact to all intents and purposes he sued to recover from Ralston the contract price of the stock he bought but did not pay for.

The par value of the stock was $100 a share. If Ralston had agreed to pay the bank $150 a share the plaintiff could have recovered that amount. Likewise, if the purchase price had been fixed at $75 a share, that would have been the limit of the plaintiff's recovery. The principle is not changed by the fact that the contract price was fixed at the par value. It is true that the allegation in Ralston's case was that he "subscribed" for the stock, but the evidence was to the effect and the court expressly found that he purchased it and hence in a proceeding to recover the contract price whether at, above or below par, the balance due thereon is all that the plaintiff can recover.

7. In Ralston's case we note, indeed, it is averred that the suit was instituted "on behalf of all the creditors" of the bank. That, however, adds nothing to the matter. It would be for the benefit of creditors just the same if the superintendent of banks had sued

Jones on his note given to the bank for borrowed
money. In short, Ralston's liability involved in that
case was for a debt to the corporation contracted with
it after it became a going concern. Waterbury's lia-
bility here is upon his promise to contribute directly
to the capital stock. The former is absolute for the
amount he agreed to pay. The latter is provisional,
measured by what may be required to make up the
deficiency of other assets for payment of debts.

8. As clearly pointed out by Mr. Justice BENSON, it
is a rule that in a proceeding to wind up a corporation,
subscriptions to the capital stock must be enforced
*pro rata* and only so far as may be necessary to liqui-
date the indebtedness after an account has been taken
and the balance is settled. In liquidation the plaintiff
bank examiner may realize in full for a debt owing by
any individual to the bank; while upon subscriptions
to the capital stock he may recover only from all
delinquents *pro rata* and no more than enough to piece
out the other assets of the institution to pay its debts.
If Ralston "bought" stock from the bank as distin-
guished from "subscribing" originally for it, he must
pay the price. He might have purchased fully paid-up
stock or some upon which there was an unpaid balance
or subscription. In the latter instance, no matter
what price he paid, he took it *cum onere* and he would
have to respond *pro rata* like any other stockholder
in a liquidation suit if he was yet holding it at the
commencement of that litigation. It is easy to con-
ceive a case where an individual purchasing on credit
from a corporation and still holding a block of its
partly paid-up stock would be a proper party defend-
ant to an action against him alone by the liquidation
officer to recover the full purchase price as well as a
defendant in a suit against all stockholders to recover

from them proportionately enough to discharge the corporate debts and wind up the concern, but no more.

9. Much stress is laid in the petition for rehearing on the presumption "that a thing once proved to exist continues as long as is usual with things of that nature": L. O. L., § 799, subd. 33. The plaintiff's argument is that it having been alleged that the defendants were stockholders once upon a time, that is, when the stock was issued to them, it follows that they are stockholders even to the beginning of the suit in the absence of any contrary showing. This would be true if it were inherent in a share of stock, as a law of its nature, that once private ownership attached thereto, that relation would continue for any definite time, as do the four seasons, the period of gestation and the like. Duration, however, is not an invariable attribute of ownership in shares of stock.

10. Moreover, the presumption named is a rule of evidence and not of pleading. In a proper case it may be used as a means of proving a well-stated allegation, but it cannot usurp the place of averment. *Templeton* v. *Bockler,* 73 Or. 494 (144 Pac. 405), cited by plaintiff on this point, was a case where a chattel mortgagor sued his mortgagee for an accounting of the proceeds of the sales of the personalty involved and charged, among other things, that the latter had converted a portion to his own use. Present ownership of the property was not directly involved. The presumption was used in the opinion solely as a rule of evidence and not of pleading. Again in *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 883), the substance of the complaint was that the defendant, being at the time the owner of a stallion, contracted with the plaintiff on August 26, 1903, that the latter was to keep the horse until August 15, 1904, and that on January 26, 1904,

prior to the expiration of the stipulated period the defendant wrongfully took the animal from plaintiff's possession in Marion County and still wrongfully detained him there. All the court held in that case was in substance that enough was alleged to show that the plaintiff's possessory right to the property had been violated. That precedent might be applicable here if in the present instance it appeared that when the defendants took the stock for which they subscribed they covenanted to keep it until the corporation should be dissolved or until a date subsequent to the commencement of this suit; but there is no such pretension.

11-13. It is against those who hold stock at the time that the plaintiff is entitled to proceed under Section 4586, L. O. L., as amended by Chapter 171, Laws of 1911, p. 244, empowering him "if necessary to pay the debts of such bank to enforce the individual liability, if any, of the stockholders." The fund thus to be acquired is in the nature of a reserve to be called in and applied when the other assets of the bank are exhausted and a balance of indebtedness remains unpaid. In such a case all the stockholders should be made parties and the court should ascertain and decree the proportional amount each one should pay toward liquidation of the balance of the bank's liabilities already ascertained. It is in this sense that we must read and understand the language of the former opinion about levying an assessment. All that is stated in the complaint might have happened as there averred and still the defendants legitimately might not be stockholders when the bank went into liquidation under the superintendent of banks.

14. It matters not for the purposes of this case that the law requires one half the capital to be paid in be-

fore a bank begins business and the remainder within six months thereafter. This, indeed, constitutes an assessment by operation of law, but none the less, while unpaid, the liability thereon is a chose in action from which is to be derived the reserve fund already mentioned applicable only to make up a deficiency after the exhaustion of other assets. This is a suit calling for contributions to the reserve fund of the moribund corporation. The Ralston case was in reality a proceeding to recover a debt due the bank. The recovery in the Ralston case will do much to lessen the wholly different liability which the plaintiff would enforce in this suit. This, however, must be brought against those who hold stock upon which there is an unpaid balance of the par value subscribed.

The petition for rehearing is denied.

DISMISSED. REHEARING DENIED.

MR. JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.