Argued October 29, affirmed November 20, rehearing denied December 18, 1917.

# MYERS *v.* INDIANA MINING CO.

### (168 Pac. 719.)

**Mortgages—Mining Claims—Foreclosure—Evidence—Fraud.**

1. In a suit to foreclose a mortgage on a mining company covering balance due on mining claims and for services, evidence *held* not to show bad faith or fraud as to the value of such mining claims.

**Corporations—Fraud—Evidence.**

2. Evidence *held* insufficient to show connection of a mortgagee with any fraudulent transactions in mining stock of the mortgagor, a corporation, on a foreclosure against such corporation.

**Corporations — Enforcement of Stockholder's Liability — Mortgage Foreclosure—Assessments.**

3. In a mortgage foreclosure against a mining corporation, under a defense by a trustee in bankruptcy that the mortgage was fraudulent and that the mortgagee was an owner of stock, a prayer that such stock be assessed for an unpaid balance thereon could not be granted.

[As to the liability of stockholder to the creditors of the corporation, see note in 3 **Am. St. Rep.** 806.]

From Baker: GUSTAV ANDERSON, Judge.

Suit by W. L. Myers against the Indiana Mining Company, a corporation, the Hot Springs Copper Company, a corporation, and T. M. Shoemaker, as trustee in bankruptcy for said last-named company, to foreclose a mortgage. There was a decree for plaintiff and the Hot Springs Copper Company appealed. Affirmed.

In Banc. Statement by MR. JUSTICE BENSON.

This is a suit to foreclose a mortgage. The complaint is in the usual form. In the first instance the defendant filed demurrers which being overruled they failed to answer and a decree was entered in favor of plaintiff. Thereafter the defendant Hot Springs Copper Company was adjudged a bankrupt and Shoemaker, as trustee, filed a motion to vacate the decree and permit him to file an answer which was then tendered. This motion was allowed and the answer filed.

After denying that the two defendant corporations are separate entities and alleging that they are the same corporation under different names, this pleading then denies that the note and mortgage were executed for value. Then follows a general and sweeping denial of every allegation in the complaint. This in turn is followed by a series of prolix affirmative defenses, the first of which avers that the note and mortgage were executed in consideration of a claim by plaintiff that there was due to him an unpaid balance of the purchase price or certain mining claims, which had been conveyed by him to the Indiana Mining Company, but that such claim was false; that nevertheless the president and secretary of the corporation without authority executed the same; that thereafter certain directors having a pecuniary interest in the transaction and, being a majority of the board, falsely represented to the other directors that it was a just and valid claim and thereby secured a ratification thereof, and that such representations were false and were made for the purpose of defrauding the company and hindering and delaying its creditors. A second affirmative defense and counterclaim alleges that the plaintiff and certain others who are named, at the time of the organization of the Indiana Mining Company, conspired to purchase from plaintiff certain mining claims at a fictitious valuation of $75,000 when in fact they were not worth more than $1,000, and that this deal was the origin of the obligation upon which the note and mortgage were founded; that the sole purpose of these men was to exploit the public by the sale of stock in a worthless mine. Then follows a recital of the various acts alleged to have been performed in pursuance thereof including the following:

"That from the sale of the treasury stock the said pretended mining property was equipped with mining machinery of great value and a large force of men were employed and shafts, tunnels, drifts and other excavations was done thereon to the amount of several thousand feet of work at the expense of more than $200,000."

It is asserted that all this work was done for the purpose of deceiving stockholders and prospective purchasers of stock, and that the result was a sale of large quantities of the stock. It reiterates that all these transactions were based upon the fraud involved in the original purchase of the claims and urges that the court ought to decree a recovery from the plaintiff of the sums already received by him upon such purchase price.

The third affirmative defense alleges that plaintiff subscribed for and received 150,000 shares of the stock of the Indiana Mining Company for which he has paid nothing; that the corporation is insolvent; that certain enumerated debts are due and unpaid; and that the assets are insufficient to pay the same. The answer concludes with a prayer that the mortgage be declared void; that the court assess the value of the mining claims so sold by plaintiff and require him to refund the excess payments and that his holdings of corporate stock be assessed for the unpaid balance thereon for a sufficient amount to pay the corporate debts.

The reply consists of denials. From a decree in favor of plaintiff defendant Hot Springs Copper Company appeals.        AFFIRMED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Orville B. Mount.*

For respondent there was a brief over the names of *Mr. William Smith* and *Mr. William S. Levens,* with an oral argument by *Mr. Smith.*

MR. JUSTICE BENSON delivered the opinion of the court.

The testimony in this case is exceedingly voluminous and contains an unreasonably large amount of irrelevant and immaterial matter but, after a painstaking investigation, we have sifted the following essential facts which are practically undisputed. The plaintiff and his mining partner, Simmons, were the owners of a group of unpatented quartz mining claims which were undeveloped. In the month of December, 1902, they executed a written option to purchase the same in favor of Alonzo Cleaver for the purchase price of $75,000, of which $2,000 was paid by Cleaver a short time afterward. There was then in existence a corporation known as the Will Cleaver Mining Company which, in June, 1903, changed its name to Indiana Mining Company in accordance with the provisions of Section 6705, L. O. L. Immediately thereafter Cleaver proposed to sell his option to this corporation for 400,-000 shares of its corporate stock, bearing a par value of one dollar per share but having practically no market value. This offer was accepted and in January, 1904, the corporation tendered to Myers and Simmons 300,000 shares of its stock at a valuation of $30,000, and its three equal promissory notes for the balance of the purchase price of the claims, such notes to be secured by a mortgage on said claims. This offer was accepted and the necessary papers were duly executed. Thereafter Myers was elected a director of the corporation. An active campaign was then begun for the sale of capital stock for the purpose of securing funds

to develop and work the mine. Myers worked for the company as its superintendent for the wages of $5 per day and board. Development work upon the mine continued, and Myers worked therein with exceptional industry. Payments upon the mortgage debt were made from time to time until March 24, 1906, when the president and secretary prevailed upon plaintiff to cancel the mortgage and accept new and unsecured notes for his share of the balance due, Simmons having been already satisfied. At a meeting of the board of directors on May 5, 1906, this action was ratified by a formal resolution of the board.

Plaintiff continued in the employ of the company until June, 1908, when he quit work. He then urged the payment of the amount due which by this time included unpaid wages to the extent of about $2,000, and on December 12, 1908, the notes and mortgage involved in this suit were executed by the proper officers to secure the debt and at a later meeting this action was ratified. On October 25, 1910, the assets of the corporation were sold to one Bert German, and, on November 1, 1910, the sale was ratified at a meeting of the stockholders. Immediately thereafter the Hot Springs Copper Company was incorporated to take over from German the assets formerly belonging to the Indiana Mining Company, and this corporation permitted stockholders of the former company to exchange their stock for an equal number of shares of the new by paying in cash an additional five cents per share, or to exchange two shares of the old for one of the new. If the plaintiff was a stockholder in the Indiana Mining Company at this time he accepted neither proposition, and was never associated with the Hot Springs Copper Company. This latter company was adjudged a

bankrupt and the trustee in bankruptcy defends this suit.

1. Regarding the first defense, want of consideration, we observe that the debt represented by the notes and secured by the mortgage consisted of the balance due upon the mining claims, the purchase price of a small tract of timber and a balance due for wages. At the time of the sale the mining locations were of course entirely undeveloped and the plaintiff could no more foretell their future value than could the purchaser. The only evidence of fraud in this connection is found in the fact that subsequent work and large expenditure of money demonstrated that the hopes of all concerned were vain. These facts present a situation not at all unusual in any mining locality, and every sale of a "prospect" must necessarily involve the possibility that the purchase may result in disappointment and financial loss, but such a termination does not imply bad faith or fraud. There is no contention that plaintiff did not perform the services for which the wages are claimed or that the corporation did not acquire the timber land. The trial court therefore properly found that the instruments sued upon were executed for a valuable consideration.

2. The second defense goes largely into the question of fraudulent sales of capital stock and if we concede that this constitutes a defense in the foreclosure suit, still we are unable to find in the record any convincing evidence that plaintiff had any part in any fraudulent transactions in that respect.

3. As to the third defense it is enough to say that there is no sufficient pleading nor is this a proceeding wherein the relief suggested could be granted: *Sargent* v. *Waterbury,* 83 Or. 159 (161 Pac. 443, 163 Pac. 416).

The decree of the lower court is affirmed.

AFFIRMED.   REHEARING DENIED.