Submitted on briefs February 21, affirmed March 6, 1928.

# EDNA Z. JOHNSON *v.* WILLIAM E. JOHNSON
## ET AL.

### (264 Pac. 842.)

**Evidence—Insanity Once Adjudicated is Presumed to Continue Until Disproved.**

1. Insanity, adjudicated at time of commitment to state hospital, is presumed to continue until presumption is overcome by evidence to contrary.

**Adoption—Burden was on Mother, Suing to Set Aside Adoption Decree After Her Discharge from Hospital for Insane, to Establish Her Sanity When Adoption Petition was Filed (Or. L., § 9775).**

2. In mother's suit, under Section 9775, Or. L., to set aside decree of adoption of her children, after her discharge from state hospital, to which she was committed as insane, burden was on her to establish her sanity at time of filing of petition for adoption.

**Adoption—Mother not Insane at Time of Adoption Proceedings, cannot be Deprived of Her Children Without Day in Court (Or. L., § 9768).**

3. If mother was not insane when proceedings for adoption of her children were had after her parole from hospital to which committed, she could not be deprived of children under Section 9768, Or. L., without her day in court.

**Adoption—Evidence Held to Support Finding That Mother, Suing to Set Aside Adoption Decree, was Sane When Adoption Petition was Filed (Or. L., §§ 9768, 9775).**

4. In mother's suit, under Section 9775, Or. L., to set aside adoption decree, entered without personal notice to her by consent of next friend, under Section 9768, evidence *held* to support trial judge's finding that plaintiff was sane when petition for adoption was filed.

**Adoption—Mother, not Personally Notified of Adoption Petition, may Sue to Set Aside, as Well as Move for Reversal of, Decree (Or. L., § 9775).**

5. Under Section 9775, Or. L., mother may apply for reversal of adoption decree, entered without personal notice to her of petition for adoption, by original suit to set aside decree, as well as by motion.

---

Adoption of Children, 1 C. J., p. 1389, n. 58, p. 1394, n. 50.
Insane Persons, 32 C. J., p. 757, n. 37.

1. Presumption as to continuance of insanity, see notes in 4 Ann. Cas. 491; Ann. Cas. 1912C, 388; 35 L. R. A. 117; 7 L. R. A. 588. See, also, 14 R. C. L. 622.

From Marion: L. H. McMahan, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Carson & Carson.*

For respondent there was a brief over the name of *Messrs. Hall & Lepper.*

BELT, J.—This appeal involves the validity of certain proceedings had in the County Court for Marion County relative to the adoption of two minor children of whom plaintiff is the mother. The plaintiff and Ivan E. Johnson, son of the defendants, were married in March, 1919, and, as a result of this union, there were born Willard C. Johnson and Vivian F. Johnson, the subjects of this controversy, now about six and four years of age respectively. On February 6, 1923, the mother, the plaintiff herein, was duly adjudged insane and committed to the Oregon State Hospital at Salem. On May 28, 1924, plaintiff was paroled to her mother and, on November 1st of that year, was finally discharged from the institution. On September 22, 1924, defendants filed their petition for adoption. Among other things, it was averred "that the said mother of said minors is now, and has been for more than one year last past, insane." No citation or notice of this proceeding was given to the mother. The father gave his written consent to such adoption and, pursuant to Section 9768, Or. L., petitioned the court to appoint as next friend of the children one Nona White, a juvenile officer, to give or withhold the consent of the mother. After investigation, this

124 Or.—31

officer filed her consent. The State Child Welfare Commission also gave its approval to such adoption. Upon hearing, the County Court entered a decree in accordance with the prayer of the petitioners. In September, 1925, plaintiff instituted suit in the Circuit Court to set aside and hold for naught the decree of adoption for the reason, among others, that she was not insane at the time the petition for adoption was filed. Issue was joined on the question of plaintiff's alleged insanity and the trial court, after hearing, rendered a decree in favor of the plaintiff. Hence this appeal.

1, 2. The vital question is: Was the plaintiff sane at the time of the filing of the petition for adoption of the minor children on September 22, 1924? On this question of fact the burden of proof rests upon the plaintiff. Her mental condition was adjudicated at the time of her commitment to the state hospital. This condition, once shown to exist, is presumed to continue until such presumption is overcome by evidence to the contrary. In other words, it is incumbent upon plaintiff to establish her sanity: 14 R. C. L. 622; 32 C. J. 757.

3. Section 9768 of the statute provides:

"If either parent is insane * * the court shall proceed as if such parent were dead, and in its discretion may appoint some suitable person to act in the proceedings as next friend of the child, and give or withhold the consent aforesaid."

Of course if the mother was not insane when the adoption proceedings were had she could not be deprived of her children without her day in court. Defendants proceeded on the theory that no notice to the mother was required for the reason that she was civilly dead.

Section 9775, Or. L., provides:

"A parent who has not, before the hearing upon a petition for the adoption of his child, had personal notice thereof, may, at any time within one year after actual notice, apply to the circuit court to reverse the decree; said court, after due notice, may in its discretion reverse the same if it appears that any of the material allegations in the petition were not true."

It appears without contradiction that the plaintiff did not have actual notice of the proceedings had in the County Court and that she commenced the present suit within the statutory time. At this juncture it may well be stated that no question is made of the moral fitness of the mother to care for her children. Her mental status is the sole issue.

4. At the time plaintiff was committed to the state hospital her case was diagnosed as a catatonic type of dementia praecox. Dr. L. F. Griffith, who is the first assistant physician of the state hospital and who is held in high repute as an alienist, in explaining this particular type of insanity said:

"Dementia praecox is a term applied to quite a large group of mental cases, characterized, usually, by more or less mental deterioration with general symptoms such as excitement or depression or delusional trouble, some cases taking one type and some another. The catatonic type in particular is characterized by fits of depression or excitement, and very often by negativism, that is, opposition to doing ordinary things. This was a rather prominent symptom with Mrs. Johnson."

When the patient was paroled to her mother some doubt was entertained as to whether she would get along satisfactorily outside of the institution. However, it appears that she rapidly improved mentally

and physically and at the time that she was discharged Dr. Griffith said he was surprised ''to find her so well.'' Counsel for appellants on direct examination inquired of Dr. Griffith as to the probability of the recurrence of plaintiff's mental disturbance. He answered thus: ''No—I might explain as to a recurrence—if that were present there would have been no recovery, she would have been insane right along, and she seemed to. have recovered.'' While plaintiff was under parole to her mother she and her husband, in the month of June, attended the wedding of a relative in Portland. The record also discloses that she traveled to some extent alone. On September 13, 1924, she and her husband met in Salem and lived together there for several days as man and wife. Yet he now insists that she was at such time insane. After a few days she was sent by her husband, as she says, to Portland for the purpose of doing some shopping. While she was gone the petition for adoption was filed.

We agree with counsel for appellants, ''It is a hard thing to take the children away from their mother.'' No court is called upon to pass upon a more delicate question nor one wrought with so much responsibility. We are not unmindful of the welfare of the children nor can we forget the natural right of this mother to have the care and custody of those who are of her flesh and blood. We think it is established by a fair preponderance of the evidence that the plaintiff was sane when this petition for adoption was filed. It would require much space in the reports to review in detail the evidence on this phase of the case and we are not inclined to do so. We have only the cold record before us. The trial judge saw this woman and had an opportunity of observing her

demeanor and general appearance. After a careful study of the record we are not prepared to disturb his findings.

5. We see no merit in the contention that the application for a reversal of the adoption decree should have been made by a motion rather than by an original suit. The statute provides that the parent "shall apply to the Circuit Court to reverse the decree." We are not greatly concerned with the form in which the application was made. Suffice it to say, sufficient facts were alleged to invoke the aid of equity. As a matter of practice we see no objection to the procedure followed by the plaintiff.

The decree of the Circuit Court is affirmed.

AFFIRMED.