Argued March 15, reversed April 11, 1974

# FREIGHTLINER CORPORATION, *Respondent,* v. GYLES, *Appellant.*

521 P2d 1

*Norman L. Lindstedt,* Portland, argued the cause for appellant. With him on the briefs were Buss, Leichner, Lindstedt, Barker & Buono, Portland.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, James C. Dezendorf and Vawter Parker, Portland.

TONGUE, J.

This proceeding was filed as a suit in equity for an accounting for the value of truck parts belonging to plaintiff and sold by defendant and to enjoin defendant from acquiring and selling truck parts taken from plaintiff without its knowledge and consent. At

the conclusion of the trial, the court concluded that neither an accounting nor an injunction was appropriate. The court then entered findings of fact and conclusions of law in support of a judgment in favor of plaintiff and against defendant in the sum of $8,068.52 for the value of seven truck transmissions as the property of plaintiff converted by defendant to his own use. Defendant appeals.

Defendant contends, among other things, that the court's findings were not supported by any competent evidence and that the trial court erred in admitting hearsay evidence and in not requiring plaintiff to offer the "best evidence" of certain facts.

■ Because the sufficiency of the evidence is challenged we must review the testimony. In doing so we bear in mind the fact that the trial court made findings of fact as in an action at law pursuant to ORS 16.460 (3). See *Olson v. Roop,* 255 Or 368, 370, 467 P2d 437 (1970), and *Rogers v. Day,* 230 Or 564, 566, 370 P2d 624 (1962). Defendant acquiesced in this procedure. Also, because the case was tried by the court without a jury, we must assume that the trial court disregarded any incompetent or otherwise inadmissible evidence and considered only evidence that was competent and otherwise admissible. *Lenahan v. Leach,* 245 Or 496, 500, 422 P2d 683 (1967).

Plaintiff's vice president of administration at its Portland plant, Mr. Kelly, testified, over objection as hearsay, that he had been "notified" by agent Bradbury of the Portland office of the Federal Bureau of Investigation that after taking possession of some other truck parts belonging to plaintiff in Stockton, California, the FBI there interrogated a Mr. Fred

Miner and a Mr. Ray Paoletti and discovered in their possession six Fuller transmissions and one Dana transmission. Mr. Kelly said that the agent had given him the serial numbers of the seven transmissions.

Mr. Kelly also testified, over an objection that such testimony was not the best evidence, that he had "first checked our receiving records" to determine whether plaintiff "had ever received the transmissions bearing those unique serial numbers" and had discovered that they had been received at plaintiff's Portland plant; that he had then "queried" the computer, in which plaintiff's inventory information is apparently "stored," to determine "whether there had been any transactions involving those unique serial numbers subsequent to the receipt of them at that Portland Plant" and had "found no transactions"; that "they had not been used; they had not been sold, and, presumably, were still in our inventory."[1] The particular serial numbers were never stated. No written "receiving records" or computer "print-outs" were offered in evidence.

Defendant testified that he buys and sells truck parts; that he has purchased many truck parts from the "disposition area" of plaintiff's plant and also some from "Sales and Service"; that he had purchased some transmissions in a "lot sale" at the "disposition area" of plaintiff's plant. He produced several Freightliner invoices listing purchases as "msc lot" or "msc surplus." He also testified that he purchased other transmissions from various junk yards under receipts listing "pound-

---

[1] It developed on cross-examination of Mr. Kelly that he delegated to another person the task of checking these records. However, no motion was then made to strike his testimony for that reason.

age" only. He testified that he sold seven Fuller transmissions and one Dana transmission to Mr. Miner and "possibly" sold some also to Mr. Paoletti. He kept no record of the serial numbers of truck parts bought and sold by him.

In rebuttal, Mr. Kelly testified that such transmissions were never sold in "lot sales" or from the "disposition area" at plaintiff's plant, but only as individual, serially numbered items.

In considering whether this evidence is sufficient to support a judgment for conversion we must bear in mind that plaintiff did not have the burden to prove that defendant *acquired* the transmissions unlawfully. Plaintiff was required, however, to establish that defendant, by the sale of truck transmissions belonging to plaintiff, converted to his own use property of which plaintiff was entitled to possession. See *Swank v. Elwert,* 55 Or 487, 496, 105 P 901 (1910). See also *Montgomery v. U.S. Nat'l Bank et al,* 220 Or 553, 568, 349 P2d 464 (1960) ; *Mustola v. Toddy,* 253 Or 658, 663, 456 P2d 1004 (1969).

Plaintiff says that defendant admitted acquiring *some* transmissions which had belonged to plaintiff and also admitted selling some transmissions to Mr. Miner and possibly others to Mr. Paoletti; that his testimony as to how he acquired these transmissions was inconsistent with his testimony on deposition and was disproved by Mr. Kelly; and that this evidence was alone sufficient to support the judgment, without reference to the testimony by Mr. Kelly relating to his conversation with the FBI and his checking of plaintiff's receiving and inventory records.

■ It may be, as contended by plaintiff (citing *Dencer v. Jory,* 131 Or 653, 284 P 163 (1930), and *Tully v.*

*Tully,* 213 Or 124, 322 P2d 1085 (1958)), that conversion can be established by circumstantial evidence. We do not believe that the circumstantial evidence in this case, including defendant's admitted acquisition and sales of *some* transmissions, was sufficient to support a finding that defendant wrongfully converted plaintiff's property. There is no evidence that these transmissions were manufactured by plaintiff. On the contrary, it appears that they were trade-named items that were presumably available elsewhere.

■ The proof of the identity of the property in an action for conversion must be reasonably certain. *Gregory & Co. v. N.P.L. Co.,* 15 Or 447 (1887). Neither *Tully* nor *Dencer,* cited by plaintiff, involved similar facts. No cases involving similar facts have been found. See, however, *Bankers Life & Cas. Co. v. Guarantee Res. Life Ins. Co.,* 365 F2d 28 (7th Cir 1960), involving somewhat similar facts.

Under the facts of this case, we hold that in order to prove that the truck transmissions sold by defendant to Mr. Miner and Mr. Paoletti were truck transmissions belonging to plaintiff it was required to offer some substantial and competent evidence from which the trier of the facts could find, among other things:

(1) That the truck transmissions which Mr. Kelly undertook to check by reference to plaintiff's receiving and inventory records following the call to him by the FBI, were the same identical transmissions as the transmissions which were sold by defendant to Mr. Miner, and

(2) That these same transmissions were in fact acquired by plaintiff and held by it in its inventory.

We must therefore consider the testimony of Mr. Kelly on these subjects.

1. *Mr. Kelly's testimony as to what the Portland FBI agent told him that the California FBI agents had reported was hearsay.*

Plaintiff contends that Mr. Kelly's testimony that he received a call from a Portland FBI agent reporting to him the serial numbers of truck transmissions, as apparently reported in turn by FBI agents in California, was not hearsay because it was not offered to prove the truth of the facts so reported, but only to show where Mr. Kelly "got the numbers so he could check them in his inventory," citing 6 Wigmore on Evidence (3d ed 1940) 177, § 1766 et seq. On that basis the trial court stated "I am not accepting it [this testimony by Mr. Kelly] for the truth of the statements."

■ It may be true that this testimony was admissible for that limited purpose. The difficulty, however, is that there was no evidence to establish that the transmissions sold by defendant to Mr. Miner and Mr. Paoletti were the same identical transmissions as those represented by the serial numbers checked by Mr. Kelly in plaintiff's receiving records unless the report to him by the Portland FBI agent as to what he was told by California FBI agents is accepted as true, i.e., unless the facts included in that report were true and accurate, including a true and accurate report of the serial numbers on the transmissions. This testimony by Mr. Kelly relating to the report to him by the FBI agent was hearsay when considered for that purpose. Cf. *Sheedy v. Stall*, 255 Or 594, 597, 468 P2d 529 (1970), citing 6 Wigmore on Evidence (3d ed 1940) 189, § 1770 n. 5. Cf. *Pacific N.W. Bell v. Century Home*, 261 Or 333,

337, 491 P2d 1023, 494 P2d 884 (1972). It follows that there was no competent evidence to establish that essential connecting link.

Plaintiff urges that we recognize an exception to the hearsay rule for the purposes of this case, citing our recent decision in *Timber Access Ind. v. U.S. Plywood*, 263 Or 509, 519-21, 503 P2d 482 (1972). In that case, however, not only were there "special circumstances as a voucher for the accuracy" of that out-of-court statement, but also the equally important element of "necessity" was satisfied in that the declarant was since deceased. There was no showing in this case of any reason why the FBI agents, including the Portland agent, were not available. Cf. McCormick on Evidence (2d ed 1972) 608, § 253. In addition, the testimony in this case involved "double hearsay" in that Mr. Kelly testified not only to what the Portland FBI agent told him, but also to what the California FBI agent reported to the Portland agent.

2. *Mr. Kelly's testimony as to the contents of plaintiff's "receiving records" was not the best evidence.*

■ The testimony of Mr. Kelly that he "checked our receiving records" for the transmissions bearing the serial numbers as reported to him and found that plaintiff had received those seven transmissions at its Portland plant was also inadmissible over objection that the receiving records were the best evidence.

As stated in 4 Wigmore on Evidence (Chadbourn rev 1972) 574, § 1242:

> "The fundamental notion of the rule requiring production is that in writings the smallest variation in words may be of importance, and that such

errors in regard to words and phrases are more likely to occur than errors in regard to other features of a physical thing. * * *"

See also Note, 41 Or L Rev 138, 139 (1962).

This is not a case of a so-called "nonwritten transaction" which has been recorded in a record, but of which the witness has firsthand knowledge. Cf. McCormick, *supra*, 564, § 233, and 4 Wigmore on Evidence, *supra*, 577, § 1244. In this case Mr. Kelly did not purport to have any personal knowledge of the receipt of these transmissions. He went to the "receiving records" to see what they showed.

Therefore, in testifying that plaintiff's "receiving records" showed that these transmissions had been received the testimony of Mr. Kelly was not the best evidence. *Mitchell v. Emblade,* 80 Ariz 398, 298 P2d 1034, 1038 (1956). See also *Dockery v. Gardner,* 141 Or 64, 68, 15 P2d 481 (1932), and *Lumbermens Mut. Cas. v. Jamieson,* 251 Or 608, 612, 447 P2d 384 (1968). Cf. McCormick, *supra*, 586, § 247. Plaintiff failed to show any good reason why it could not produce what Mr. Kelly referred to as its "receiving records." *Velasquez v. Freeman,* 244 Or 40, 47, 415 P2d 514 (1966).⊗

---

⊗ It does not appear that the "receiving records" referred to by Mr. Kelly were "stored" in a computer. And, if so, we believe that the affirmative fact that such serial numbers were shown to have been recorded in plaintiff's "receiving records," even if thus "computerized," should at least have been shown by the production of a computer "print-out" as the best evidence. This is a different problem from that of proving by a computer "audit trail" that there had *never* been any subsequent sale or other transaction relating to these specific inventory items, a fact for which no single computer "print-out" may be available, but only a computer "audit trail" which would "fill this room," according to the testimony in this case. See also 4 Wigmore on Evidence (Chadbourn rev 1972) 579-80, § 1244, citing State v. Whiteaker et al, 118 Or 656, 663, 247 P 1077 (1926). But see Koeneke, Hart v. B & O Lbr. Co., 224 Or 241, 243-44, 356 P2d 149 (1960).

For these reasons we hold that the judgment of the trial court was not supported by competent evidence on two essential "connecting links" and must be set aside. Because of the disposition of this case we need not consider defendant's remaining assignments of error, including the most interesting question whether testimony relating to the results of checking plaintiff's computer was admissible as evidence that there had been no sale or other disposition of the transmissions and, if so, what qualifications may be required of a witness who undertakes to testify to the results of such computer "check."[9]

Reversed.

---

[9] On the subject of the admissibility of computer "print-outs," see Note, 9 Wake Forest L Rev 428 (1973); Note, 55 Cornell L Rev 1033 (1970), and Freed, Computers and the Law (4th ed 1973) 50. See also United States v. De Georgia, 420 F2d 889 (9th Cir 1969).