Argued and submitted January 8, reversed and remanded
to Multnomah County District Court March 25,
petition for rehearing denied May 13, 1980

STATE OF OREGON,
*Respondent,*

*v.*

DOROTHY RACHEL HARRIS,
*Petitioner.*

(No. J 10557, CA 12989, SC 26506)

609 P2d 798

David L. Slader, Portland, argued the cause for appellant. With him on the briefs were Jed C. Macy and Anna M. Moran, Portland.

Al Laue, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Mary J. Deits, Assistant Attorney General, Salem.

Before Denecke, Chief Justice, Tongue, Howell, Lent and Linde, Justices, and Tanzer, Justice Pro Tempore. **

TONGUE, J.

DENECKE, C.J., and TANZER, J., dissented and filed opinions.

***

**Linde, J., did not participate in this decision.

**TONGUE, J.**

Defendant was convicted of the crime of "driving while suspended." (ORS 487.560). Defendant was a resident of Camas, Washington, and had a valid Washington driver's license. Previously, while driving in Oregon, her right to drive a motor vehicle in Oregon had been suspended effective August 17, 1977, for an indefinite period because she had failed to appear in Multnomah County District Court on an earlier traffic citation.[1] (ORS 484.210(2)). On appeal to the Court of Appeals defendant contended that the trial court erred in admitting into evidence that portion of a certificate authenticating a copy of the suspension order which stated that "our records reveal this order was in full effect on 4-30-78" (the date on which defendant was cited for driving while suspended).

On that appeal defendant assigned as error the overruling of her objection that this statement was hearsay and did not fall within any exception to the hearsay rule. The Court of Appeals held that it need not decide that issue because "[t]he introduction into evidence of a certified copy of the suspension order plus the testimony of the arresting officer establishes a prima facie case" and that "[a]ny contention by defendant that the suspension order was no longer in effect was a matter of defense." 41 Or App 643, 646, 598 P2d 1246 (1979). We allowed defendant's petition for review in order to consider both the question (1) whether the statement that "our records reveal this order was in full effect on 4-30-78" was admissible in evidence and, if not, (2) whether there was sufficient evidence to sustain defendant's conviction.

---

[1] The suspension order in this case dealt with defendant's right to operate a motor vehicle in Oregon and did not suspend an Oregon license in the usual sense.

ORS 487.560 refers not only to driving while one's "license" is suspended but also to driving when "his right to apply for a license * * * has been suspended."

ORS 482.010(7)(c) defines "license" to include "any nonresident's operating privilege."

### 1. *The statement that the suspension was still in effect was not admissible.*

The statement "our records reveal this order was in full effect on 4-30-78" is clearly an out-of-court statement that was offered to prove the truth of the fact stated and is thus hearsay evidence. The question is whether the statement was admissible under any recognized exception to the hearsay rule.

The state contends that this statement was admissible under ORS 43.370, which provides:

> "*Entries in public or other official records*, including books, data processing devices and computers, made by a public officer of this state or the United States in the performance of his duty or by another person in the performance of a duty specially enjoined by the law of either, are primary evidence of the facts stated." (Emphasis added)[2]

In support of that contention the state cites *Finchum v. Lyons*, 247 Or 255, 428 P2d 890 (1967).

The difficulty with such a contention, however, is that ORS 43.370 is limited by its express terms to *"entries"* in public records. The statement "our records reveal this order was in effect on 4-30-78" was not an "entry" in a public record, but was a hearsay statement included in a certificate appended to a copy of a public record.

---

[2] Reference is also made by the state to ORS 482.580 and 43.330(1). ORS 482.580 provides:

> "Notwithstanding the provisions of subsection (1) of ORS 43.330, proof of the order of suspension may be made by submitting to the court a copy of the order of suspension certified as a correct transcript thereof by an officer or an employe of the division."

ORS 43.330(1) provides:

> "Other official documents may be proved as follows:
>
> "(1) Acts of the executive or administrative departments of this state and of the United States by the records of the departments, certified by the department heads; or by public documents prepared or printed by order of the Legislative Assembly, Congress, or by either house."

As recognized by the state, however, these statutes are not controlling in this case, but provide only that certified copies are admissible.

The state also contends that the statement in controversy is an "entry" in a public record for the purposes of ORS 43.370 despite the fact that it is in "summary form" and that "the fact that this entry in public records cannot be proven except in summary form should not make it inadmissible." It is well established that written "summaries" of entries in private records can only be offered in evidence through the testimony of the person who prepared such a summary. *See Rolfe v. N.W. Cattle & Resources, Inc.*, 260 Or 590, 604-5, 491 P2d 195 (1971). No reason is suggested by the state why the same rule should not apply to "summaries" of entries in public records other than possible inconvenience of producing a witness qualified to give such testimony. As previously noted, however, this statute, by its express terms, is limited to proof of "entries" in public records themselves and for that reason does not extend to "summaries" of such entries.

The dissent by Denecke, C.J., appears to recognize that the statement "our records reveal this order was in full effect on 4-30-78" is not admissible either under the terms of any Oregon statute, including ORS 43.370, or under the recognized common law exception to the hearsay rule for "official statements." It is nevertheless contended by the dissent that the court should recognize a new and additional exception to the hearsay rule in order to make such statements admissible in evidence.[3]

For this court to do so would be contrary both to its prior decisions (which will be discussed) and also to the rule of law as stated in McCormick on Evidence, 742, § 320 (2d ed 1972) as follows:

"No common law authority exists, however, for the admissibility of a paraphrase or summary of

---

[3] According to the dissent by Denecke, C.J., "what is now ORS 43.370 was contained in Deady's Civil Code, § 735, Title V, Ch. 8," with the apparent inference that it is an ancient and outmoded statute. The fact is, however, that ORS 43.370 has been "updated" as recently as 1967 by extending its application to "data processing devices and computers." 1967 Or Laws, c 489, § 1.

[707]

records by the custodian. *In the absence of specific statutory authority, a certification by the custodian or official written statements that 'our records show X' is not admissible to prove X.*

"For similar reasons, the common law rule did not permit the introduction of the certification of the custodian as to the absence of an official written statement or of the absence of an entry in such a statement to prove the lack of statement or entry. Only the custodian himself could testify as to due search and inability to find the relevant document. Wigmore refers to this rule as 'one of the stupid instances of legal pedantry in our annals,' and it has been modified by statute or court rule in many jurisdictions." (Emphasis added)

It is true, as stated by McCormick, that this rule has been criticized in 5 Wigmore on Evidence 868 (Chadbourn ed. 1974) in which it is stated that:

"The certificate of a custodian that he has diligently searched for a document or an entry of a specified tenor and has been unable to find it ought to be usually as satisfactory for evidencing its nonexistence in his office as his testimony on the stand to this effect would be; and accordingly *by statute or court rule custodians' certificates of this sort have been expressly made admissible."* (Emphasis added)[4]

Wigmore (by footnote 3 on pp 867-68) lists the many decisions by courts of other states holding that such statements in certificates are inadmissible, with only two cases to the contrary, both decided prior to 1850. Wigmore then (by footnote 4 on pp 868-70) lists the 36 states and the federal courts which have made such statements admissible, but only by statute or rule of civil procedure.

It may be that the rule proposed by Denecke, C.J., in his dissent is one which should be adopted by statute in Oregon. No cases are cited by him, however, in which courts have adopted such a rule other than by

---

[4] Note that the statement in the certificate involved in this case does not include a statement that a diligent search had been made, as would be required by the rule or statute advocated by Wigmore, *supra,* at 868.

statute or by court rule (by courts authorized to adopt rules of civil procedure).

In an opinion by Rossman, J., in *Allan v. Oceanside Lumber Co.*, 214 Or 27, 48, 328 P2d 327 (1958), in holding an "abstract" of the contents of an official record with an attached certificate to be inadmissible, this court said that:

> "If the document is admissible it must be under one of the exceptions to the hearsay rule authorized by the laws of this state."

The analysis adopted by the opinion in that case was to then consider whether such evidence was admissible under either ORS 41.690 (the Oregon Uniform Business Records as Evidence Act) or ORS 43.370 (relating to what it referred to as "official statements") and to hold that because the "abstract" of the contents of that official record did not satisfy the requirements of either statute it was inadmissible.

That analysis of the problem is also consistent with previous decisions by this court. Thus, in *McIntosh Livestock Co. v. Buffington*, 116 Or 399, 241 P 393 (1925), this court held inadmissible a certificate by the Idaho Secretary of State to the effect that a corporation had not only filed Articles of Incorporation in 1920, but "had remained in good standing * * * until December 1, 1922. * * *", holding (at 408-9) that:

> "The law as stated in 22 C.J., Section 980, is particularly applicable:
>
> " 'To prove a fact of record without the production of the record itself, a duly authenticated copy of the record, or so much thereof as relates to the fact in question, is required. *A certificate by a public officer having the lawful custody of public records as to any fact appearing on the records of his office or as to any conclusion he may draw from an inspection of the records is not competent evidence, unless made so by statute'* (citing numerous authorities) * * *.
>
> "Judge Sanborn, considering a similar question in *U.S. Slicing Machine Co. v. Wolf, Sayer & Heller, Inc.*, 243 Fed. 413, says:

[709]

" 'The general governing rule is that the official certification of a fact drawn or gathered from a public record is mere legal conclusion, or the opinion of the certifying officer, and so not admissible as evidence. He should copy the record *verbatim,* certifying that he has done so, and that the copy is an accurate transcript of the original.' " (Emphasis added)

The dissent by Denecke, C.J., refers to "another portion of *McIntosh,*" presumably for the proposition that the certificate in this case is admissible because it is similar to a certificate of the *Oregon* Corporation Commissioner which this court held to be admissible. What the dissent fails to point out is that in *McIntosh*, this court determined that the certificate of the Oregon Corporation Commissioner was admissible "by virtue of section 6910, as amended by chapter 244, General Laws of Oregon for 1923, * * *." (Now ORS 57.781) 116 Or at 407. *By the express terms of that statute "such certificate shall be prima facie evidence of the legal existence of such foreign corporation."* There was no evidence that the Idaho statute included such a provision. The opinion is clear that in the absence of such a statute, with such a provision, the certification would *not* have been admissible as evidence to prove the continued legal existence of the corporation.

Indeed, as early as its decision in *N.P.T. Co. v. City of Portland,* 14 Or 24, 13 P 705 (1886), this court, in a writ of review to review proceedings to condemn real property to widen a street, held to be inadmissible a statement included in a certificate made by the auditor and clerk of the city that the plaintiff had received from the City of Portland the amount of money specified in the report of the viewers, saying (at 28) that:

"He can make and authenticate by his certificate copies of all records of which the law makes him the

[710]

custodian, but beyond this his certificate is without legal effect."[5]

The Oregon Legislature has adopted a series of statutes relating to the proof of the contents of public records and which expressly provide requirements which must be complied with in proving the contents of a public record. *See* ORS ch 43, Public Writing and Their Admissibility. *See also, e.g.,* ORS 482.580. Necessarily, the contents of a public record includes both what affirmatively appears and what does not appear in such a record.

The method chosen by the legislature in ORS ch 43 for proof of the contents of a public record was the same as at common law—the production of the original or a copy of the record itself, so that what the record shows and what it does not show can be determined by an examination of that document, rather than by a hearsay written statement of its contents by a person not available for cross-examination. Those statutes also specify the requirements for certificates to be attached to such documents in order for them to be admissible in evidence.

When transcripts of public writings are stored in a data processing device or computer, as may well be the situation in this case, the form of the required certificate is specified in detail as follows:

"Whenever a transcript of a public writing stored in machine language in a data processing device or computer is certified to be used as evidence, it shall

---

[5] More recently, in *Wynn v. Sundquist,* 259 Or 125, 132-34, 485 P2d 1085 (1971), this court held that a "report" is not admissible under ORS 43.370 as a "record or document."

This court has also declined to extend other Oregon statutes relating to evidence beyond the terms of such statutes or to adopt rules of evidence to the contrary, despite criticism of such statutes. *See, e.g., Marshall v. Martinson,* 268 Or 46, 49-50, 518 P2d 1312 (1974), and *Smith v. Durant,* 271 Or 643, 648, 534 P2d 955 (1975) (impeachment by proof of other crimes); *Nielson v. Bryson,* 257 Or 179, 183-84, 477 P2d 714 (1970), and *Woosley v. Dunning,* 268 Or 233, 245-46, 520 P2d 340 (1974) (doctor/patient privilege). *See also Freightliner Corporation v. Gyles,* 268 Or 357, 364, 521 P2d 1 (1974) (hearsay), and *Wynn v. Sundquist,* 259 Or 125, 133, 485 P2d 1085 (1971) (official records).

[ 711]

be stated by the certifying officer that it is a correct transcript of specified data contained within the data processing device or computer." ORS 43.470(2).

Thus, a transcript of such a public record is made admissible by ORS 43.470(2). Again, however, it is the transcript that is admissible in evidence and the certificate does no more than validate the transcript.[6]

For these reasons, we hold that the trial court erred in admitting into evidence the statement, "our records reveal this order was in full effect on 4-30-78."

2. *The evidence was insufficient to prove that the suspension was still in effect at the time of defendant's subsequent citation.*

The crime of "driving while suspended" in violation of ORS 487.560 is a "major traffic offense" and a Class A misdemeanor (ORS 487.560(5)), with a maximum term of imprisonment of one year (ORS 161.615(1)), and a maximum fine of $1,000 (ORS 161.635(1)). The elements which must be proved to establish that crime include (1) driving a motor vehicle upon a highway, (2) "during a period when (the driver's) license * * * has been suspended."[7]

As previously noted, the Court of Appeals held that even without the disputed statement on the copy of the order of suspension there was other evidence sufficient to sustain defendant's conviction of that offense. That

---

[6] For admissibility of computer "print-outs" *see* authorities cited in *Freightliner Corporation v. Gyles*, 268 Or 357, 364, n. 3, 521 P2d 1 (1974).

[7] ORS 487.560(1) provides:

"A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division or revoked by the division or if he drives a motor vehicle outside the restrictions of a license issued under ORS 482.475 or 482.477."

*See also State v. Lawrence*, 36 Or App 733, 736, 585 P2d 727 (1978).

holding was based upon its reasoning that "[t]he introduction into evidence of a certified copy of the suspension order plus the testimony of the arresting officer establishes a prima facie case"; that "[a]ny contention by defendant that the suspension order was no longer in effect was a matter of defense," and that "[n]o such defense was made at trial."[8] (41 Or App at 646-47).

The only testimony by the officer was that upon stopping defendant for exceeding the speed limit while driving a motor vehicle on a highway he "told her that she was suspended for failure to appear" and that "she said she had received a citation last year and had appeared in court on that citation." The suspension order showed only that it was dated July 28, 1977, and suspended defendant's license "effective 08-17-77 for an indefinite period." The only other evidence was the certified copy of the mailing receipt signed by the defendant on August 8, 1977, for a copy of the order of suspension. The traffic citation for driving while suspended was dated April 30, 1978. [9]

It is clear that such testimony, together with the certified copy of the previous suspension order, was insufficient to establish that defendant was driving "during a period when (her) license * * * has been suspended" unless a jury could properly find from such evidence, and beyond a reasonable doubt, that the

[8] The Court of Appeals cited no authorities in support of this conclusion other than its own previous decisions, which are not controlling, in our view, in deciding the problem presented in this case. These include *State v. Lawrence*, 36 Or App 733, 736, 585 P2d 727 (1978); *State v. Nagel*, 30 Or App 495, 499, 567 P2d 585 (1977). Also cited were *State v. Moore*, 247 NC 368, 101 SE 2d 26 (1957), and ORS 161.055. None of these authorities, other than North Carolina case of *State v. Moore, supra,* is relevant to the question whether the order of suspension effective August 18, 1977, for an "indefinite period" was still in effect on April 30, 1978.

[9] The dissent by Tanzer, J., appears to attach some importance to defendant's failure to produce an Oregon operator's license. As previously noted, however, defendant never had an Oregon license; rather it was her "right to apply" for an Oregon license that was suspended. See footnote 1.

[713]

order of suspension effective August 17, 1977, "for an indefinite period" was still in effect on April 30, 1978, over eight months later.

We are chided by the vigorous dissent of Tanzer, J., for not approaching the solution to this case by considering first the question whether it was harmless error for the trial court to admit into evidence the certificate, including the statement, "our records reveal this order was in full effect on 4-30-78." According to that dissent:

> "We have construed Or Const, Art VII (Amended), § 3, and ORS 138.230 to require that we affirm the judgment in a criminal case if there is substantial and convincing evidence of guilt and the error was unlikely to have changed the result of the trial."

The dissent goes on to say that "this case is just that simple"; that "this case demonstrates anew that the right answer is usually straightforward and that tortuous reasoning is usually erroneous."

We have quite deliberately not considered the question of "harmless error" because, as conceded by Tanzer, J.:

> "Obviously, if there is not enough remaining evidence to go to the factfinder, the error was prejudicial * * *."

In other words, the question of "harmless error" only arises when, in the absence of wrongly admitted evidence, there remains evidence sufficient to entitle the finder of fact to find beyond a reasonable doubt that defendant was guilty.

For these reasons, we are of the opinion that we must first consider the sufficiency of such evidence. Also, because this is a criminal case we must consider that question not only in the light of Article VII (Amended), § 3 of the Oregon Constitution and ORS 138.230, but also in accordance with requirements of the Constitution of the United States as construed by the Supreme Court of the United States, as will be

discussed. In our opinion, the resolution of that question depends upon whether there was either a presumption or an inference upon the basis of which the finder of the fact could reasonably find beyond a reasonable doubt that the order of suspension "for an indefinite period" was still in effect on April 30, over eight months later.

In Oregon, by statute, a presumption is "a deduction which the law expressly directs to be made from particular facts," (ORS 41.340) and is a "kind" of "indirect evidence." (ORS 41.310). Although presumptions "other than conclusive presumptions" (*i.e.*, "disputable presumptions") "may be controverted by other evidence, direct or indirect, * * * unless so overcome, the jury is bound to find according to the presumption." (ORS 41.360). *See also U.S. National Bank v. Lloyds*, 239 Or 298, 324-25, 382 P2d 851, 396 P2d 765 (1964).

One of these "disputable presumptions" is that "[a] thing once proved to exist continues to exist as long as is usual with things of that nature." (ORS 41.360(32)). Thus, the question is presented whether, by reason of this statutory presumption, the suspension order "effective 8-17-77 for an indefinite period" is to be presumed to have "continued to exist" (*i.e.*, to remain in effect) until April 30, 1978, eight months later, in the absence of evidence to the contrary.

According to the dissent by Tanzer, J., "[n]o issue of presumption is presented" and "the question is one of inferences, not presumptions," although stating that "this distinction was erroneously not made" in *State v. Garrett*, 281 Or 281, 574 P2d 639 (1978).

In our judgment, however, and regardless of whether the statutory presumption of continuity under ORS 41.360(32) is to be regarded as a presumption or as an inference, the problem is the same and, in our judgment, the necessary analysis remains the same.

It has been truly stated that a presumption is one of "the slipperiest member(s) of the family of legal terms."[10] Most of the previous decisions in which this court has considered ORS 41.360(32) (the "presumption of continuity") are of little help in deciding this question.[11] Courts in some other states have applied such a presumption in cases involving suspensions of drivers' licenses.[12] We find those cases of little assistance, however, in resolving the problems presented in this case.

[10] McCormick, *supra,* 802-803, § 342.

[11] That presumption has been held applicable, usually with little analysis, (1) to prove continued insanity *(State v. Garver,* 190 Or 291, 302-5, 225 P2d 771 (1950); *In re Dugan,* 158 Or 439, 442, 76 P2d 961 (1938), and *Johnson v. Johnson et al,* 124 Or 480, 482, 264 P 842 (1928). *But see State v. Weller,* 285 Or 457, 461, 591 P2d 732 (1979)); (2) to prove marriage in an adultery case *(State v. Eggleston,* 45 Or 346, 77 P 738 (1904)); (3) to prove continued life in an escheat proceeding *(Kankkonen v. Hendrickson et al,* 232 Or 49, 55, 374 P2d 393 (1962)); (4) to prove continued ownership of real property *(State v. McVey,* 168 Or 337, 345, 121 P2d 461, 123 P2d 181 (1942)); personal property *(Templeton v. Bockler,* 73 Or 494, 504, 144 P 405 (1914)); and funds in an account *(Sanford v. Pike,* 87 Or 614, 619, 170 P 729, 171 P 394, (1918)); (5) to prove continued value of machinery *(Maxson v. Ashland Iron Works,* 85 Or 345, 352, 166 P 37, 167 P 271 (1917)); (6) to prove continued out-of-state residence of a witness at a former trial *(State v. Meyers,* 59 Or 537, 541, 117 P 818 (1911)); and (7) to prove that an agency relationship continued *(Laam v. Green,* 106 Or 311, 317, 211 P 791 (1923)).

On the other hand, this court has held the presumption not to be applicable (1) to prove that persons continued to be stockholders in a corporation *(Sargent v. Waterbury,* 83 Or 159, 181, 161 P 443, 163 P 416 (1917)); (2) to prove continued possession of an automobile by a used car dealer *(Hayes v. Ogle,* 143 Or 1, 8, 21 P2d 223 (1933)); (3) to prove that a debtor continued to have certain funds (*Weigar v. Steen,* 81 Or 72, 74, 158 P 280 (1916). *See also Hammer v. Downing,* 41 Or 234, 238, 66 P 916 (1901), and *State ex rel Gutridge,* 46 Or 215, 219, 80 P 98 (1905)); (4) to prove that a witness continued to be too infirm to attend trial *(Carter v. Wakeman,* 45 Or 427, 429, 78 P 362 (1904)); (5) to prove that a person would continue conduct known to violate a statute *(Musgrave et ux v. Lucas et ux,* 193 Or 401, 414, 238 P2d 780 (1951)), or (6) to prove that a decedent remained idle up to the moment of his death *(Jamerson, Adm'x v. Witt, Executrix,* 215 Or 227, 237, 332 P2d 1054 (1959)).

[12] In *State v. Fernandez,* 3 Conn Cir 109, 209 A2d 194 (1964), it was held, with little analysis, that proof of an indefinite suspension two years previously made a prima facie case and that defendant then had "the burden of proving his defense." To the same general effect, *see People v. Witvoet,* 22 Ill App 3d 375, 317 NE 2d 292 (1974); *State v. Harris,* 133 A2d 483 (NH 1957), and *Commonwealth v. Ralph,* 10 Ches Co Rep 626 (Pa 1962). In *Harris* and *Ralph,* however, defendant's entire driving record was in evidence. To the contrary, *see State v. Hoffer,* 197 NW2d 368 (Iowa 1972).

In *Jamerson, Adm'x v. Witt, Executrix*, 215 Or 227, 332 P2d 1054 (1959), in considering the presumption of continuity, this court (at 237) said that:

> "The disputable presumption upon which the plaintiff depends is not applicable to an act which is in a state of flux or dependent upon the will of the actor, but rather to the existence of the material object, or the continuance of a more or less static condition like sanity."

If the analysis of this court in *Jamerson* is to be adopted, an indefinite suspension of a driver's license for failure to appear can hardly be considered to be a "more or less static condition," but may perhaps be more properly described as a condition which is "in a state of flux" or one "dependent upon the will" of the defendant himself, because the suspension of a driver's license for failure to appear, as in this case, is subject to automatic termination if and when the driver makes such an appearance, as expressly provided by ORS 484.210(2) and as subsequently discussed. As pointed out in the dissent by Tanzer, J., the driver must also pay an $8 reinstatement fee (since raised to $25 per ORS 482.505(1)).

It has also been held by this court that under at least some circumstances the presumption of continuity will not be applied in the absence of evidence as to "how long it is usual" for the condition to continue. *State v. Weller*, 285 Or 457, 461, 591 P2d 732 (1979). *See also Weigar v. Steen*, 81 Or 72, 74, 158 P 280 (1916). Although such a rule would appear to be proper in considering application of the presumption to a condition such as insanity, as in *Weller*, it would appear that no such evidence could reasonably be required in the application of the presumption of continuity to a condition such as the continued existence of Mt. Everest, as suggested by Wigmore, *supra.* Similarly, it is at least doubtful whether such evidence could reasonably be required in a case such as this, in which the "condition" involved is the continued "existence" of an order by an administrative agency suspending a license for an indefinite period. Indeed,

what emperical evidence could there be to show "how long it is usual" for such an order to continue in effect?

The difficulty of the problem is compounded upon the application of the presumption of continuity in criminal cases. Defendant contends that to hold that the order of suspension of his driver's license creates a disputable or rebuttable presumption that the order was in effect on the day of his arrest shifts the burden of proof on this issue to the defendant to disprove that fact and that to impose such a burden of proof upon a defendant in a criminal case violates his constitutional right of due process and negates his presumption of innocence, citing *In re Winship*, 397 US 358, 90 S Ct 1068, 25 LEd 2d 368 (1970); *Mullaney v. Wilbur*, 421 US 684, 95 S Ct 1881, 44 LEd 2d 508 (1975); *Ex parte Kameta*, 36 Or 251, 60 P 394 (1900), and *State v. Wakefield,* 111 Or 615, 228 P 115 (1924).

Defendant also contends that whether the problem be considered as one involving either a presumption or inference, these constitutional requirements are not satisfied in a criminal case unless there be both a "rational connection" between the proved fact and the presumed or inferred fact and also unless that fact is "more likely than not" to follow from the proved fact and that the proof in such a case must also satisfy the standard of proof beyond a reasonable doubt, citing *Tot v. United States*, 319 US 463, 467, 63 S Ct 1241, 87 LEd 1519 (1943); *Leary v. United States*, 395 US 6, 36, 89 S Ct 1532, 23 LEd 2d 57 (1969), and *Barnes v. United States*, 412 US 837, 93 S Ct 2357, 37 LEd 2d 380 (1973).[13]

A simplistic solution, supported by some authority, would be to hold that the presumption of continuity has no application in a criminal case because such a presumption would conflict with the defendant's pre-

---

[13] *See also* McCormick on Evidence 830-32, § 346 (2d ed 1972), and 1 Underhill's Criminal Evidence 101, § 46 (1973). *Cf. State v. Vance,* 285 Or 383, 392-94, 591 P2d 355 (1979).

sumption of innocence. (ORS 41.360(1)).[14] It is now generally regarded, however, that the presumption of innocence is not a true presumption, but instead is "an amplification of the prosecutor's burden of persuasion." [15]

In *Jamerson, Adm'x v. Witt, Executrix, supra,* at 237, this court quoted with approval from Wigmore on Evidence, 3d edition, § 437, as follows, in discussing the "presumption of continuity":

"The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case at hand. That a soap bubble was in existence half an hour ago affords no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; whether the fact of a tree's existence a year ago will indicate its continued existence today will vary according to the nature of the tree and the conditions of life in the region. *So far, then, as the interval of time is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control."* [16]

---

[14] *See Sokolic v. State,* 228 Ga 788, 187 SE 2d 822 (1972). *See also* Lawson, Law of Presumptive Evidence, 240 (1899). *Cf. State v. Wakefield,* 111 Or 615, 632, 228 P 115 (1924).

[15] McCormick, *supra,* n. 10, at 805-806, § 342. To the same effect, *see* 1 Warton's Criminal Evidence, 152 § 92 (13th ed 1972) and 1 Underhill's Criminal Evidence 80-81, § 41 (6th ed 1973).

[16] Wigmore goes on to state as follows:

"That no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is evidential, is sufficiently illustrated by the precedents, from which it is impossible (and rightly so) to draw a general rule. *They may be roughly grouped into two classes*—those in which the evidence has been received without any preliminary showing as to the influential circumstances remaining the same in the interval (thus leaving it to the opponent to prove their change by way of explanation in rebuttal), and those in which such preliminary showing is required. Whether it should be required must depend entirely on the case in hand, and it is useless to look or to wish for any detailed rules." (Emphasis added)

We agree with the proposition that in considering the application of the presumption of continuity in any given case, the degree of probability of such a continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end and that each case must be decided upon its particular circumstances.

ORS 484.210(2), which is the controlling substantive statute in this case, provides as follows:

> "If the defendant fails to appear for the hearing at the time and place fixed by the court and no bail has been deposited, the court may notify the Motor Vehicles Division of the defendant's failure to appear. In the notification the court shall certify that notice was given the defendant as prescribed by subsection (1) of this section and that the defendant failed to appear for the hearing. Upon receipt of such notification, together with a fee of $5, the division shall suspend the defendant's license for an indefinite period. *If the defendant thereafter makes his appearance before the court, the court shall notify the division of the fact and the division shall thereupon terminate the suspension order pursuant to this subsection. * * *"* (Emphasis added)

As previously stated, it appears from the record in this case that on August 8, 1977, defendant was notified of the suspension of her driver's license when she received from the Motor Vehicle Division a copy of the order which had been entered on July 28, 1977, suspending her driver's license "effective 8-17-77 for an indefinite period." In *Musgrave et ux v. Lucas et ux,* 193 Or 401, 414, 238 P2d 780 (1951), this court, although under different facts, held that:

> "Presumably, with the knowledge that their continued operations would violate the federal statute, defendants discontinued them. It cannot be presumed that they knowingly persisted in performing unlawful acts."

Although the facts of that case were different, the principle is somewhat the same.

It also appears from the testimony of the officer, as a witness for the state, that when he gave defendant the citation for "driving while suspended" on April 30, 1978, he "told her that she was suspended for failure to appear" and that "she said she had received a citation last year and had appeared in court on that citation."

According to the dissent by Tanzer, J., "it is consistent with human experience that, unlike temporary or 30-day suspensions of non-resident operator's privileges, the duration of an indefinite suspension tends to be indefinite," and the conviction of the defendant in this case must be affirmed "where it is proved that a non-resident operator's privilege has been suspended * * * in the absence of evidence of a change in that condition" because "it is reasonable for a factfinder to infer that the indefinite suspension is still in effect eight months later."

The rule advocated by that dissent may well be applicable in Oregon in civil cases by reason of Article VII, § 3 of the Oregon Constitution. In criminal cases, however, this court is bound to conform to requirements imposed by the Constitution of the United States as interpreted by the Supreme Court of the United States. As recently held by that court in *Jackson v. Virginia*, 443 US 307, 99 S Ct 2781, 61 LEd 2d 560, 573 (1979):

"* * * the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. * * *"

The state had the burden to prove beyond a reasonable doubt each element of the crime with which this defendant was charged, including proof that the order suspending defendant's driver's license remained in effect for a period of over eight months. As previously noted, under the provisions of ORS 484.210(2), if the defendant at any time during that period had made an appearance before the court on the citation which led

[721]

to the suspension of her driver's license, the suspension order would have been terminated upon her payment of a fee of $8.

As also previously noted, defendant was given notice of that suspension. Also, according to uncontradicted testimony of the officer, a witness for the state, defendant told the officer that after receiving notice of a citation during the past year she had appeared in court upon that citation.

The dissent by Tanzer, J., would accord no "legal significance" to this evidence. It may be true, as stated by the dissent, that this statement was not "offered for its truth"; that it did "not specify which citation it applies to," and was no more than "defendant's unsworn, uncross-examined out-of-court declaration," which the finder of the fact was entitled to disbelieve.

While we agree that such evidence is by no means controlling, we do not agree that it may be entirely disregarded. After all, when hearsay evidence is introduced without objection it is entitled to consideration as "competent" and substantive evidence. *Lauback v. Industrial Indemnity Co.,* 286 Or 217, 222, 593 P2d 1146 (1979). Also, it was offered as a portion of the testimony of a witness produced by the state. Although the state may not always be bound by testimony offered by one of its witnesses, in our judgment it is evidence entitled to some consideration in a decision of this case, at least as one of "the circumstances of this particular case."

After viewing evidence in this case in the light most favorable to the state, and upon application of the rule required by *Jackson v. Virginia, supra,* we are of the opinion that a "rational trier of the fact" could not have properly found *beyond a reasonable doubt* from the admissible evidence in this case that this order of suspension was still in effect on April 30, 1978. In reaching this conclusion we do not hold that in the usual case the presumption of continuity does not apply to an order by a court or administrative agency.

We hold, instead, to paraphrase Wigmore, *supra,* that under the "circumstances of this particular case," including the nature of this order, the notice given to this defendant, the statutory provisions for termination of the order, and the testimony of the state's witness in this case, that "the chances of intervening circumstances having occurred" so as to terminate the continued existence of this order were such that a "rational trier of the fact" could not have properly found that "the degree of probability" that this order continued in existence for a period of eight months was sufficiently great to support a finding *beyond a reasonable doubt* that this order of suspension was still in effect on April 30, 1978.[17]

The final charge by the dissent of Tanzer, J., is that to so hold is to "decide a factual dispute as a matter of law." The sufficiency of the evidence in a criminal case, however, is always a question of law. As held in *State v. Krummacher,* 269 Or 125, 137-38, 523 P2d 1009 (1977) (cited by the dissent):

> "After a verdict of guilt, or in deciding whether the case should be submitted to the jury, such conflicts must be treated as if they had been decided in the State's favor. After the conflicts have been so decided, we take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt."

For these reasons, the judgment of the trial court and the decision by the Court of Appeals must be reversed and this case must be remanded to the Multnomah County District Court for a new trial.

Reversed and remanded.

---

[17] *Cf. State v. Garrett,* 281 Or 281, 286, 574 P2d 639 (1978), in which this court held that similarity of names, without additional evidence, will not support a finding of identity for the purposes of ORS 41.360(25).

**DENECKE, C. J.,** dissenting.

The state offered and the court received a properly certified copy of a record of the Department of Motor Vehicles. The record was entitled, "Order of Suspension," and it recited in part: "It is Hereby Ordered pursuant to ORS * * * [Dorothy Rachel Harris's] nonresident's operating privilege * * * is suspended effective 08-17-77 for an indefinite period." Below the copy of the record, the certifier further recited, "and that our records reveal this order was in full effect on 4-30-78 * * *."

I am of the opinion that it is reasonable to interpret the certifier's statement, "our records reveal this order was in full effect on 4-30-78," as a statement to the effect that there is no entry that defendant's license was reinstated.

The defendant objected only to that part of the exhibit stating, "our records reveal this order was in full effect on 4-30-78."

Based upon a statement made in the opinion in *Finchum v. Lyons,* 247 Or 255, 262-263, 428 P2d 890 (1967), the state contends that this hearsay statement is admissible because of an exception to the hearsay rule codified in ORS 43.370. In my opinion this statement in *Finchum* was incorrect and ORS 43.370 has nothing to do with the admissibility into evidence of entries in official records. I am unable to determine whether the majority decides that ORS 43.370 is or is not applicable.

The substance of what is now ORS 43.370 was contained in Deady's Civil Code, § 735, Title V, ch 8. (1862). This early date makes it doubtful that it was intended as an exception to the hearsay rule. ORS 43.370 provides:

"Entries in public or other official records, including books, data processing devices and computers, made by a public officer of this state or of the United States in the performance of his duty or by another

person in performance of a duty specially enjoined by the law of either, are primary evidence of the facts stated."

The statute does not concern the admissibility of the entries. It does not address how entries from official records are to be proved. It concerns the evidentiary value of entries in official records whether the entry itself or a certified copy of the entry is offered into evidence. ORS 43.370 says the entry is "primary evidence."

Section 664 of ch VIII of Deady's Code (now ORS 41.090) provided:

"Primary evidence is that, which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. For example; the certificate of a recording officer is primary evidence of a record; but it may be afterwards overcome upon proof that there is no such record."

No other statutes govern the admissibility of this official record except ORS 43.330, relating to authentication, which is not in issue. There being no other statute, the admissibility of the certificate is to be determined by this court. In *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972), the objection was made that the hearsay evidence received should not have been received because it was not within any statutory exception to the hearsay rule. We stated:

"* * * Although defendant does not say so, the implication might be that if the statutes do not provide for the testimony's admissibility, it is not admissible. The contrary is true. In the face of a similar contention, which included ORS 41.850, we said in *King v. Ind. Acc. Com.,* 211 Or 40, 309 P2d 159, 315 P2d 148, 318 P2d 272 (1957), as follows:

" '* * * Possibly the Shepard and Pratt opinions were remiss in overlooking the fact that the rules governing the admissibility of a deceased's declarations are broader than the sections of our laws which they cited * * *.' 211 Or at 64." 263 Or at 522.

There is a well-recognized judicial exception to the judicially-created hearsay rule. The exception makes

admissible authenticated copies of official records. *Finchum v. Lyons, supra,* 247 Or at 262. This exception is consistent with the reasoning behind the rule excluding hearsay evidence. The reason for the exclusion is that hearsay evidence is untrustworthy because the declarant's veracity and accuracy cannot be tested by cross- examination. *Sheedy v. Stall,* 255 Or 594, 596, 468 P2d 529 (1970). The circumstances surrounding the keeping of official records negate the necessity of the right of cross-examination to insure the accuracy of the evidence.

> " 'This exception to the hearsay rule is based on the reliability, trustworthiness, and authenticity which usually attend public records and reports made and kept in the performance of official functions. It is predicated on the assumption that public officials perform their dutues and are without motive to falsify, and that public inspection, to which such records are subject, will disclose inaccuracies. The purpose of the rule is to dispense with the appearance in court of public officials to prove routine matters.' " *Finchum v. Lyons, supra,* 247 Or at 262.

While the common law recognized that properly authenticated copies of entries in official records are admissible as an exception to the hearsay rule, the older decisions would not admit authenticated copies stating there were no entries. 5 Wigmore, Evidence § 1678(7), 867-868 (1974). Fortunately, this court never adopted that ill-conceived distinction. Wigmore commented:

> "* * * Whether a court would go so far in a given instance as to require a copy of the entire group of entries or integral series of documents was not entirely settled; but it was certain that the only evidence receivable would be the testimony on the stand of one who had made a search (usually of the custodian himself), and that the custodian's certificate of *due search* and *inability to find* was not receivable under the present exception. But this rule, too, partook of an excess of formality, and imposed inconvenience and expense where it was unnecessary. It will someday be reckoned as one of the most stupid instances of legal

pedantry in our annals. The certificate of a custodian that he has diligently searched for a document or an entry of a specific tenor and has been unable to find it ought to be usually as satisfactory for evidencing its nonexistence in his office as his testimony on the stand to this effect would be and accordingly by statute or court rule custodians' certificates of this sort have been expressly made admissible." (Footnotes omitted.)

In the present case the hearsay statement contained in the certificate that the defendant's license was suspended indefinitely is unquestionably admissible; the statement to the effect that there is no entry in the Division's records that the suspension has been terminated likewise should be admissible.

The majority cites *McIntosh Livestock Co. v. Buffington,* 116 Or 399, 241 P 393 (1925), for the proposition that conclusions the certifier draws from the official records are not admissible. I do not quarrel with this general proposition; however, "conclusions" should not be too broadly applied. As stated, the certificate in this case, "our records reveal this order was in full effect on 4-30-78," was in effect a statement that there is no entry in the Division's records that the license suspension has been terminated.

This court's views on what should not be considered "conclusions" are shown by another portion of *McIntosh.* The Oregon Corporation Commissioner made a certification stating:

" 'I further certify that McIntosh Livestock Company has filed all annual reports up to and including June 30, 1924, and has paid all annual license fees up to and including June 30, 1925, as required by the statutes of the State of Oregon.' " 116 Or at 406.

We held the certificate admissible.

In my opinion the entire certificate in this case is admissible; therefore, apart from any presumption, there is proof that the defendant's license was suspended on the date she was apprehended.

[727]

**TANZER, J.,** dissenting.

I agree with the opinion of Justice Tongue that the statement on the order of suspension that it "was in full effect on 4-30-78" is hearsay. I agree with both opinions that ORS 43.370 is not applicable because, as Justice Tongue points out, the statement is not an "entry" and because, as the Chief Justice points out, ORS 43.370 deals with the probative effect of evidence rather than its authenticity.

It is true, as the Chief Justice points out, that we can modify obsolete common law rules of evidence. It is arguable that this evidence is admissible because any evidence with inherent reliability should be admissible regardless of whether it is hearsay or if it fits snugly into a traditional exception to the hearsay rule. Professor Wigmore would have liked that, but there is no need for a change of law to dispose justly of this case. Hence, I do not concur in the remainder of the Chief Justice's opinion.

I concur in part 1 of the majority opinion which holds the statement to be inadmissible hearsay and that it was error to admit it. Thereafter, however, the majority's reasoning is tortuous, whereas the analysis should be straightforward.

### The correct analysis

Once it is determined that evidence was wrongfully admitted, the next question is whether the error was prejudicial or harmless. We have construed Or Const, Art VII (Amended), § 3, and ORS 138.230[1] to require that we affirm the judgment in a criminal case if there is substantial and convincing evidence of guilt and the error was unlikely to have changed the result of the trial. *State v. Van Hooser,* 266 Or 19, 511 P2d 359

---

[1] ORS 138.230 provides:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

[728]

(1973); *State v. McLean,* 255 Or 464, 468 P2d 521 (1970).

I would hold simply that the error was harmless. The remaining evidence is that defendant was operating an automobile, that she produced an out-of-state operator's license, but no Oregon license, and that eight months earlier her Oregon non-resident's operating privilege had been suspended indefinitely. There was no defense. I find it inconceivable that the district judge would have found otherwise even if the notation had not appeared in the certification. This case is just that simple.

### The first error

Part 2 of the majority opinion is not that simple. It errs in several respects. First, like the Court of Appeals opinion, it does not ask whether the error was harmless, but rather whether there was enough remaining evidence to support the finding of guilt. That is the wrong standard. Reversal is required if there is prejudicial error regardless of whether the remaining evidence is sufficient to go to the factfinder. Obviously, if there is not enough remaining evidence to go to the factfinder, the error was prejudicial, but, nevertheless, the majority misconceives the procedural framework and at least as a matter of form it is better to state the issue correctly.

### The second error

The next misconception is in the discussion of presumptions. No issue of presumptions is presented. Even if we accept the majority's premise that the preliminary issue is the sufficiency of the evidence to go to the factfinder, then the question is one of *inferences,* not *presumptions.*[2] If the evidence and all reasonable inferences therefrom are sufficient to prove the fact in issue, then the proof is sufficient to go to a factfinder regardless of whether those inferences are also embodied in presumptions. A presumption is an inference which the law requires to be made. ORS

[2] This distinction was erroneously not made in *State v. Garrett,* 281 Or 281, 574 P2d 639 (1978).

[729]

41.340.[3] In determining the sufficiency of evidence, it does not matter whether the law directs the factfinder to make an inference or whether the factfinder can reasonably do so on his own. Juries make decisions every day based on inferences they draw without the law directing them to do so. Therefore, the discussion of the majority about presumptions is irrelevant even to the issue which it erroneously poses.

### The third error

Assuming for argument that the issue is one of presumptions rather than inferences, I agree that the presumption of continuity depends on the permanent or transitory nature of the condition proved once to exist. That concept is embodied in ORS 41.360(32):

"A thing once proved to exist continues as long as is usual with things of that nature."

The summary of our cases in footnote 11 of the majority opinion demonstrates that this court has adhered to that concept: *e.g.,* marriage, partnership, insanity, life, title tend to continue, but money tends to get spent, cars possessed by dealers tend to get sold, illness tends to pass. These inferences are consistent with human experience.

Applying that principle to this case, it is consistent with human experience that, unlike temporary or 30-day suspensions of non-resident operator's privileges, the duration of an indefinite suspension tends to be indefinite. In footnote 12 the majority brushes off the cases from elsewhere that have so held as based on "little analysis," but I see no need for extended analysis of a proposition which is self-evident. The "rational connection" between the fact proved (that the license was suspended indefinitely) and the fact inferred (that thereafter the license was in a state of suspension) is obvious.

---

[3] ORS 41.340 provides:

"A presumption is a deduction which the law expressly directs to be made from particular facts."

[730]

In sum, where it is proved that a non-resident operator's privilege has been suspended indefinitely, then, in the absence of evidence of a change in that condition, it is reasonable for a factfinder to infer that the indefinite suspension is still in effect eight months later. That is true whether the inference is discretionary with the factfinder or whether it is directed by law in the form of a presumption.

### The fourth error

Next, the majority opinion reasons that the presumption that the indefinite suspension still existed is too weak to go to the jury because (1) defendant told the officer that she had appeared in court after her initial nonappearance, and (2) the effect of ORS 484.210(2), which the majority terms "the controlling substantive statute in this case" (288 Or at 720; *see also* 288 Or at 721-722), is that the suspension order must be automatically terminated if the defendant, having failed to appear in court, appears thereafter. Both prongs of this conclusion are wrong.

First, the majority refers repeatedly to defendant's statement to the officer that she appeared in court on a citation after her suspension. It is unclear, however, what legal significance the majority attaches to this evidence. No legal effect (as opposed to factual effect) is evident.

(a) The statement is not offered for its truth.

(b) It does not specify which citation it applies to.

(c) The majority seems to say that the evidence weakens the effect of the state's other evidence, but the weight of evidence is a matter for the factfinder, not the appellate court. If the defendant had so testified, the evidence would go to the factfinder to resolve the factual conflict. The majority holds, however, that because the state proved defendant's statement, it was error for the case to have gone to

[731]

the factfinder. This gives to defendant's unsworn, uncross-examined out-of-court declaration a legal effect greater than her sworn testimony would have had. By the majority's fallacious reasoning, an acquittal would be required by law wherever the state proves that the defendant, upon being caught red-handed, protested his innocence.

This convoluted reasoning has no precedent or persuasive logic and, moreover, its statutory basis is erroneous.

Contrary to the assertion of the majority, ORS 484.210 is not the controlling statute, for at least the reason that there is another statutory requirement for the reinstatement of a suspended license. The majority fails to mention it, but the requirement appears on the face of the suspension order. ORS 482.505(1) requires, without exception, payment of a license reinstatement fee of $8.[4] There is no suggestion that this statutory requirement has occurred.

The majority cites what appears to be loose language in *Musgrave et ux v. Lucas et ux,* 193 Or 401, 414, 238 P2d 780 (1951), for the proposition that

"* * * It cannot be presumed that they knowingly persisted in performing unlawful acts."

There is nothing unlawful about not paying $8. Therefore, the *Musgrave* theory of not presuming continuing illegality (whatever that double negative may mean) has no application to this case. There is no evidence that defendant has paid the fee, no reason to so infer or presume, and certainly no basis for us to conclude as a

---

[4] ORS 482.505(1) provides:

"The division shall charge a fee of $25 for reinstatment of any license that has been suspended or revoked. Except as provided in subsectin (2) of this section, no reinstatement shall be made until the fee is paid to the division. * * *"

The $8 fee required in this case was later changed to $25. Or Laws 1977, ch 392, § 1.

matter of law that the state's evidence should not have gone to the factfinder.

### The concluding error

The conclusion mixes up all the errors into one big error: it decides a factual dispute as a matter of law. *But see State v. Krummacher*, 269 Or 125, 523 P2d 1009 (1974).

The evidence is that:

(1) defendant's non-resident operator's privilege was suspended indefinitely;

(2) that eight months later she was driving an automobile;

(3) that she said she had appeared in court on a citation during the year before.

The majority concludes as a matter of law that no "rational person" could find that defendant's privilege was suspended at the time of her apprehension. This conclusion leaves me and probably most of the trial judges in this state outside that favored category.

This case demonstrates anew that the right answer is usually straightforward and that tortuous reasoning is usually erroneous. Accordingly, I dissent.