Argued and submitted September 14, affirmed December 15, 2004

## STATE OF OREGON,
### *Respondent,*

*v.*

## JAMES ALLEN STERLING,
### *Appellant.*

021129MI; A120864

103 P3d 1162

Garrett A. Richardson argued the cause and filed the brief for appellant.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

 Defendant was convicted of driving under the influence of intoxicants. ORS 813.010(4). On appeal, his sole contention is that the trial court should have granted his motion for a judgment of acquittal because there was insufficient evidence that the driveway on which the alleged violation occurred was "premises open to the general public for the use of motor vehicles." ORS 801.400. The test for determining whether a motion for a judgment of acquittal should have been granted is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Harris*, 288 Or 703, 721, 609 P2d 798 (1980) (quoting *Jackson v. Virginia*, 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979)) (emphasis in *Jackson*). Under that standard, we affirm.

ORS 813.010(4) provides that the offense of driving under the influence of an intoxicant "is applicable upon any premises open to the public." Such premises "includes any premises open to the general public for the use of motor vehicles, whether the premises are publicly or privately owned and whether or not a fee is charged for the use of the premises." ORS 801.400. In the present case, the alleged offense occurred on a driveway in front of defendant's brother's house. The driveway ran past that house and terminated in a dead end in front of another house. At its other end, the driveway connected to a private road winding through a condominium complex, which road itself ultimately connected to a public road.

We take guidance from several cases in which this court and the Supreme Court have examined particular locations to determine if they were "open to the public" under the statutes involved here.

In *State v. Mulder*, 290 Or 899, 629 P2d 816 (1981), the defendant appealed from a conviction for driving while suspended, arguing that an apartment parking lot on which he had been driving was not a premises open to the public within the meaning of the predecessor to ORS 813.010(4) and

ORS 801.400.[1] The Oregon Supreme Court disagreed. Reviewing the legislative history of the statute, the court explained that

> "the primary purpose of that statute was to enlarge the zone of statutory protection of the public * * * from public highways to 'non-highway locations that are open to the general public for use of motor vehicles' and where persons and their vehicles are subjected to danger by drunken, reckless, unlicensed and 'hit and run' drivers; that although specific reference was made in the legislative history to parking lots for such places as taverns, department stores and supermarkets, there was no intent to limit the application of the statute to those specific parking lots but that, on the contrary, the intention was to make 'no distinction between a public parking lot and one privately owned,' and to extend the protection of the statute to all parking lots which share similar characteristics of public access and exposure to danger from such improper driving of motor vehicles."

*Mulder*, 290 Or at 903-04. At trial, the manager of the apartments testified that the parking lot was accessible to members of the public because, among other things, no attempt was made to block them out. *Id.* at 904. The court held that that constituted sufficient evidence from which the trier of fact could find that the parking lot was a "premises open to the public." *Id.*

In *State v. Scott*, 61 Or App 205, 655 P2d 1094 (1982), the defendant, appealing from a conviction for driving under the influence of intoxicants, presented evidence at trial that the owners of the condominium complex where he was driving intended to restrict public access. We summarized the relevant facts as follows:

> "The entrance to the development is marked with signs stating 'private property,' 'no trespassing' and 'no soliciting.' A lake owned by the development is posted with signs restricting its use to residents and their guests. The manager of the Homeowners Association testified that,

---

[1] ORS 487.535 was repealed by Or Laws 1983, ch 338, § 978. That statute consisted of two subsections that became ORS 813.010(4) and ORS 801.400 without significant change.

although while those with a legitimate business purpose, such as garbage collectors, meter readers and paper carriers, are allowed on the premises, those without such a purpose may be asked to leave. A security guard was hired to patrol the development, and the streets have 'speed bumps.' The public was invited on the property to view condominiums for sale or rent, and until recently a sign had been posted at the entrance inviting the public to view a model condominium unit. A deputy sheriff testified that he considered the complex to be part of his routine patrol area and that there was no physical barrier to keep traffic out. Condominium owners are not required to give advance notice in order for guests to enter the development."

*Scott*, 61 Or App at 207. Because there was no physical barrier restricting public access, and because those with a legitimate business purpose were allowed on the premises, we held that a rational trier of fact could find that the parking lot was a premises open to the public. We emphasized that the focus of the inquiry should be "the actual use of the premises and its accessibility to the general public." *Id.* at 208.

Finally, in *State v. Baehr*, 85 Or App 155, 735 P2d 1275 (1987), we reversed the conviction of a defendant accused of failing to perform the duties of a driver when property is damaged because the state failed to provide any evidence that the damage occurred on "premises open to the public." *Id.* at 157. The defendant was driving on a public street when she pulled into a driveway of a private home, colliding with an unattended truck. *Id.* We distinguished *Mulder* and *Scott* on the ground that, in those cases, the state *did* put on some evidence. *Id.* at 158. The inference we draw from *Baehr* is that a driveway, like a parking lot, may be "open to the public" depending on the surrounding circumstances.

In sum, the cases construing the term "premises open to the public" teach that the phrase should be defined so as to achieve its primary purpose, which is to protect members of the public from serious driving offenses; that signs discouraging the public from entering do not necessarily close premises to the public; that the absence of a physical barrier, although not itself sufficient to prove openness to the public, is strong evidence to that effect; and that the key evidentiary

fact the state has to prove is that members of the public, including "those with a legitimate business purpose, such as garbage collectors, meter readers and paper carriers, are allowed on the premises." *Scott*, 61 Or App at 207.

Evidence presented at trial in this case reveals that a jury could find that the premises where defendant drove were, under the precepts stated above, open to the public. Although defendant's brother testified that the paved area next to his home is his driveway and is for his and his guests' exclusive use and that a "tenants only" sign was posted somewhere in the condominium complex, a neighbor testified that there are no physical barriers such as a fence or a wall limiting access and that "access is open everywhere * * * to that complex." An arresting officer and the apartment manager testified to the same effect. A witness testified that service vehicles use the road through the condominium complex, and the jury could have inferred that those vehicles use the driveway as well. Finally, defendant's brother testified that he had, over an unspecified amount of time, seen several cars drive by the house. We conclude that a rational finder of fact could have concluded that the driveway where defendant drove was open to the public.

Affirmed.